**SUMMIT CUSTOM HOMES, INC., Appellant,**

v.

**GREAT AMERICAN LLOYDS INSURANCE COMPANY and Mid–Continent Casualty Company, Appellees.**

**No. 05–05–00851–CV.**

Court of Appeals of Texas, Dallas.

July 18, 2006.

Rehearing Overruled Oct. 20, 2006.

Carl J. Wilkerson, Bush & Motes, P.C., Arlington, for Appellant.

Aaron L. Mitchell, Tollefson, Bradley, Ball & Mitchell, L.L.P., Dallas, for Appellees.

Before Justices WRIGHT, MOSELEY, and LANG.

## OPINION

Opinion by Justice WRIGHT.

Summit Custom Homes, Inc. appeals the summary judgment granted in favor of

Great American Lloyds Insurance Company and Mid–Continent Casualty Company (collectively the Insurers) and the denial of its summary judgment motion. In three issues, Summit argues that the trial court erred in granting the summary judgment because (1) the Insurers had a duty to defend, (2) the Insurers had a duty to indemnify, and (3) Summit was entitled to an eighteen percent penalty and reasonable attorneys' fees under Texas Insurance Code Article 21.55. We affirm in part and reverse in part.

### Factual and Procedural Background

Summit is a custom home builder. Great American issued Commercial General Liability ("CGL") polices to Summit from January 15, 1996 through January 15, 2000, and Mid–Continent issued similar CGL policies to Summit from January 15, 2000 to January 15, 2005.

In 1996, Summit and Stephen and Helen Lazarus signed an agreement for the construction of a residence. Summit completed the Lazaruses' home that same year. In May 2003, the Lazaruses filed suit against STO Corp., Don's Building Supply Inc., and William Anderson complaining about construction defects in their home. They asserted claims for negligence, breach of warranty, and breach of contract claiming there were defects in the exterior finishing of the home, referred to as an "Exterior Insulating and Finishing System" or "EIFS." They further argued that the EIFS was defective and sought to have it removed and replaced. Although Summit built the home in 1996, the Lazaruses pleaded the discovery rule because EIFS-related problems were "inherently undiscoverable in that defects in EIFS are latent."

STO filed a third party petition alleging any liability it owed to the Lazaruses arose from Summit's conduct. In response to STO's claims, Summit filed a claim with both Great American and Mid–Continent; however, the Insurers denied any duty to defend or indemnity. The Lazaruses then filed a Fourth Amended Petition adding Summit as a direct defendant in their suit.

Summit later sued the Insurers, seeking a declaration that both had breached their duties to defend against the suit. Thereafter, Summit filed a motion for partial summary judgment arguing that the underlying pleadings alleged "property damage" from an "occurrence" under the policies at issue. Mid–Continent and Great American also filed a joint motion for summary judgment arguing that STO failed to allege any facts triggering coverage under the policies. After a hearing, the trial court granted Mid–Continent and Great American's motion for summary judgment and denied Summit's motion. This appeal followed.

### Standard of Review

The standard of review in summary judgment is well-established. Tex.R. Civ. P. 166(c); *W. Inv., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005). When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review both sides' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

When the trial court does not specify the basis for its ruling, it is the appellant's burden on appeal to show that each of the independent grounds asserted in support of summary judgment is insufficient to support the judgment. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Caldwell v. Curioni*, 125 S.W.3d 784, 789 (Tex.App.-Dallas 2004, pet. denied). And, when the trial court's

order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 567 (Tex. 1989).

## Discussion

In its first issue, Summit contends the trial court erred in granting the Insurers' joint motion for summary judgment because the Insurers had a duty to defend them against the Lazaruses' claims. The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy. *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex.App.-Houston [1st Dist.] 1990, writ denied). The duty to defend the lawsuit is determined by the allegations in the underlying pleadings, in light of the policy provisions, and without reference to the truth or falsity of the allegations. *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 847–48 (Tex.1994); *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 838 (Tex.App.-Dallas 2004, no pet.). This is sometimes referred to as the "eight corners" rule. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). In construing the allegations of the underlying suit, the pleadings are strictly construed against the insurer, and any doubt is resolved in favor of coverage. *Pro–Tech Coatings, Inc. v. Union Standard Ins. Co.*, 897 S.W.2d 885, 887 (Tex.App.-Dallas 1995, no writ). In considering the allegations to determine whether a liability insurer is obligated under its policy to defend, we liberally interpret the meaning of those allegations. *Gehan Homes, Ltd.*, 146 S.W.3d at 838.

Because the terms of the policy dictate whether the Insurers had a duty to defend, we must first determine which policy is at issue in this case. In *Dorchester Development Corp. v. Safeco Insurance Co.*, the issue before this Court was whether coverage existed for property damage resulting from workmanship performed during the policy period when the property damage did not manifest until *after* the policy period. *Dorchester Dev. Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380, 383 (Tex. App.-Dallas 1987, no writ). We held that "no liability exists on the part of the insurer unless the property damage manifests itself, or becomes apparent, during the policy period." *Id.* If such damages are not manifested during the policy period, then there is no "occurrence" during the policy period. *Id.; see also State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 323 (Tex.App.-San Antonio 2002, pet. denied) (relying on *Dorchester* and holding that "property loss occurs when the injury or damages is manifested").

The First District Court of Appeals, however, has rejected the manifestation rule and applied the occurrence rule, expressly refusing to follow this Court's holding in *Dorchester*. *Pilgrim Enter., Inc. v. Maryland Cas. Co.*, 24 S.W.3d 488 (Tex.App.-Houston [1st Dist.] 2000, no pet.). In *Pilgrim*, the court held that an injury did not actually have to be discovered or manifested within the policy period to trigger coverage under the policy. *Id.* at 497.

Here, Summit encourages this Court to revisit its holding in *Dorchester* and apply the occurrence rule to the underlying facts of this case. We decline Summit's invitation.

## Great American Policies

Great American provided continuous coverage to Summit from 1996 to 2000.

Unlike the later policies provided by Mid–Continent, Great American's policies did not contain a specific EIFS exclusion. Summit contends that the policy provided by Great American in 1996 required it to provide a defense against the Lazarus suit because the only date alleged for the "occurrence" and "property damage" is 1996. Great American argues that because the Lazaruses pleaded the discovery rule, any property loss manifested later than 1996; therefore, the 1996 policy is inapplicable.

Despite Summit's argument to the contrary, the underlying pleadings do not establish that damage manifested in 1996. The Lazarus petition, filed in May 2003, claimed that during the construction of their home in 1996, EIFS was applied as an exterior veneer system to the home. STO's third party petition likewise acknowledges that the suit was filed in May 2003. The Lazaruses further argue that they suffered a reduction in property value, extensive damage to the home, and the need to substantially retrofit or replace the EIFS. The petition also contends that long term water penetration and retention would result in rot damage to the wooden structural elements of the house. However, missing from their factual allegations is any concrete reference to actual damages that occurred in 1996. Summit's counsel stated during oral argument that there were "no specific allegations that damages occurred in 1996, just allegations that since the house was constructed, damages have occurred."

In addition to the failure to plead factual allegations of any damage manifesting in 1996, the Lazarus petition specifically invokes the discovery rule for their claims. It states the following:

> Each and every claim made by the Plaintiffs herein is subject to the discovery rule because the defects of which Plaintiffs complain were latent and/or otherwise undiscoverable. The defects cause damage within the wall cavity which is not readily apparent to one examining the exterior of the EIFS surface. As a result, the named Plaintiffs would not, in the exercise of reasonable diligence, immediately perceive, or discover the defects complained of herein.

Thus, applying the "eight corners" rule, although the underlying pleadings state Summit constructed the home in 1996, it contains no allegations of actual damage during 1996. However, Great American failed to establish as a matter of law that damages did not manifest sometime in 1996, 1997, 1998, 1999, or 2000. *See Gehan Homes, Ltd.*, 146 S.W.3d at 846 (holding that insurers failed to establish as a matter of law that there was no allegation of a potential occurrence within the policy coverage period when the insureds claimed they suffered past property damages without identifying when in the past it occurred). Therefore, summary judgment could only be appropriate regarding Great American's duty to defend if it established as a matter of law that there was no "property damage" caused by an "occurrence," thereby negating any possible coverage under the policies.

We begin by determining whether the Lazaruses' pleadings against Summit allege property damage. "Property damage" is defined in the Great American policy as "physical injury to tangible property, including all resulting loss of use of that property." Physical injury is not defined; however, the plain meaning connotes an alteration in appearance, shape, color, or in other material dimension. *Lennar Corp. v. Great American Ins. Co.*, 2006 WL 406609, *15 (Tex.App.-Houston [14th Dist.] 2006, pet. filed) (citing *Fid. & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*, 215 F.Supp.2d 1171, 1183 (D.Kan. 2002)).

■ Although the underlying pleadings do not explicitly describe the damage to the Lazaruses' home, they repeatedly state that the home sustained "extensive damage and additional damage is likely to occur." They further pleaded that use of EIFS causes damage within the wall cavity that is not readily apparent to one examining the exterior of the EIFS surface and that long term water penetration results in rot damage to the wooden structural elements of the house. Therefore, assuming the facts alleged are true, the Lazaruses have sufficiently pleaded physical injury to tangible property resulting in "property damage." *See Gehan Homes*, 146 S.W.3d at 838 (noting that if the pleadings do not state facts sufficient to bring the case clearly within or without coverage, the general rule is that the insurer is obligated to defend if potentially there is a case under the pleadings and within policy coverage).

■ Next, we must determine if the underlying pleadings establish an "occurrence" within the terms of Great American's policies. "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Great American argues that the "business risk doctrine" applies. The principle that a CGL policy does not generally cover the insured's defective construction resulting in damage to its own work is commonly known as the "business risk" doctrine. Here, the Insurers encourage us to be "mindful" of the business risk doctrine because it has vitality in Texas. This argument, as explained by Summit, overlooks the fact that coverage for some business risks is not eliminat-

ed when the damaged work, or the work out of which the damage arose, was performed by subcontractors. *Lennar Corp.*, 2006 WL 406609, at *7.

Although Great American argues that the business risk exclusion precludes an "occurrence" under the policy, the Fourteenth Court of Appeals, in a recent opinion, thoroughly analyzed a similar CGL policy in another EIFS construction case involving Lennar homes and determined there was an "occurrence" under the policy triggering the insurer's duty to defend. *Lennar Corp.*, 2006 WL 406609 at *15.

Recognizing that Texas law is unsettled on whether defective construction constitutes an "occurrence," the Fourteenth Court of Appeals relied on this Court's holding in *Gehan Homes, Ltd.*, as well as other authority, to conclude that "under the standard CGL policy, negligently created, or inadvertent, defective construction resulting in damage to the insured's own work which is unintended and unexpected can constitute an 'occurrence.'" *Id.* at *4; *see also Gehan Homes, Ltd.*, 146 S.W.3d at 843 (holding that an insured builder's negligence resulting in unexpected damage can constitute an "occurrence").[1] Therefore, the Insurers' arguments that defective construction can never constitute an "occurrence" is incorrect.

Great American's policies contain business risks exclusions, specifically the "your work" exclusion, which prevents coverage for "property damage" to "your work" arising out of it or any part of it and included in the "products-completed opera-

---

1. Although Insurers argue the holding in *Gehan Homes, Ltd.* is distinguishable because the claims involved included more than shoddy workmanship by the builder, we do not read our holding in the case so narrowly. We simply held that the intentional act of per-

forming the contract (building the home) was allegedly performed negligently, and the purported damage was an unexpected and undesigned consequence of Gehan's alleged negligence. 146 S.W.3d at 843. As such, we are bound by our own precedent.

tions hazard."[2] In other words, the "your work" exclusion prevents coverage for "property damage" to the insured's work arising after a construction project is finished and in the owner's possession. *Id.* at \*8. If the analysis stopped here, then the business risk exclusion would apply, and there would be no "occurrence." *Id.* at \*10 (noting that in the past the "business risk" exclusions operated collectively to preclude coverage for any damage to construction projects).

■ However, Great American ignores the policy's exception to the business risk exclusion. The exception provides that "[t]his exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." In 1986, the insurance industry incorporated the subcontractor exception in the "your work" exclusion of the CGL policy, demonstrating that insurers intended to cover some defective construction resulting in damage to the insured's work. *Id.* at \*11. Further, finding no "occurrence" for defective construction that caused damage to the insured's work would render the subcontractor exception superfluous and meaningless. *Id.* Therefore, as the *Lennar* court succinctly stated:

> [N]egligently created, or inadvertent, defective construction resulting in damage to the insured's own work that is unintended and unexpected can constitute an "occurrence." Nonetheless, the "your work" or other "business risk" exclusions may preclude coverage for the damage. However, in some instances, coverage will be restored if the damaged work, or the work out of which the

damage arose, was performed by subcontractors.

*Id.* at \*12.

■ There is an "occurrence" if an action is intentionally taken, but negligently performed, and the damages are unexpected or unintended. *Gehan Homes, Ltd.,* 146 S.W.3d at 843. Here, Summit Homes intended to construct the Lazaruses' home using the EIFS system, which was installed and applied by subcontractors. The Lazaruses underlying petition and STO's third party petition assert various negligence causes of action involving the use of EIFS and the supervision of the workers applying the EIFS. Likewise, the Insurers deny that EIFS is defective; therefore, any damages were unintended because defendants believed they were using a superior cladding system that would perform well in residential construction. Therefore, following the analysis in *Lennar Corp.* and our holding in *Gehan Homes, Ltd.,* we conclude that the underlying pleadings assert an "occurrence" within the meaning of Great American's policies.

■ Because the underlying pleadings establish "property damage" caused by an "occurrence," Great American may have a duty to defend the Lazarus suit against Summit. As noted above, Great American has failed to establish as a matter of law when the alleged damage manifested. Thus, we cannot determine whether the damages occurred "during the policy period." Specifically, we cannot determine whether the 1996, 1997, 1998, 1999, or 2000 Great American policies may apply. Because a genuine issue of material fact exists, the trial court improperly granted Great American's summary judgment.

---

**2.** With certain exceptions, "products-completed operations hazard" includes "property damage occurring away from premises you own or rent and arising out of your product or your work."

Therefore, we sustain Summit's first issue regarding Great American's duty to defend and reverse and remand to the trial court for further proceedings on this issue.

### Mid–Continent Policies

■ Mid–Continent provided continuous insurance coverage to Summit from 2000 to 2005, and its policies contained a specific EIFS exclusion. The record shows that the Lazaruses' petition was filed in May 2003, the third party petition was filed in August 2003, and Summit was first named as a direct defendant in July 2004. As explained above, no damages manifested in 1996. The Insurers urge this Court to determine that damages must have occurred in 2003 or 2004 since that is when the suits were filed. However, as stated above, this argument overlooks the fact that the damages may have manifested prior to 2000, when a duty to defend would exist under Great American's policies. If, however, the damage manifested in 2000 or later, then coverage would be excluded by a specific EIFS exclusion in the Mid–Continent policies, as further explained below. Thus, Mid–Continent has conclusively established through its specific policy exclusion that it did not have a duty to defend.

The Mid–Continent EIFS exclusion provides that "if so indicated, this insurance does not apply to 'Property Damage' arising out of the 'Exterior Insulation and Finish System Hazard.'" This exclusion is specifically checked on the policy; therefore, we must consider it. "Exterior Insulation and Finish Hazard" means:

> [T]he design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an exterior insulation and finish system (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, *caulkings or sealants in connection with such a system* when performed by you or;
>
> *Any work* or operations with respect to *any* exterior component, fixture, or feature of any structure if an "exterior insulation and finish system" is used on *any part of that structure* when performed by you or on your behalf. (emphasis added).

Thus, the EIFS exclusion is broad in its reach and clearly encompasses the allegations in the underlying pleadings.

For example, STO asserted that the Lazaruses filed suit against it to recover the cost of removal of EIFS and the installation of traditional stucco. STO further claimed that Summit was negligent by failing to "properly caulk or seal where the EIFS met windows, doors, and other openings." Although Summit argues that caulking is a separate weather proofing system and it made no allegation that Summit improperly installed, designed, manufactured, constructed, fabricated prepared, applied or repaired an EIFS product, this overlooks the allegations of its failure to properly caulk or seal around the windows where the EIFS met, which clearly falls within the emphasized language above in the exclusion.

Further, the Lazarus suit is focused on the application of EIFS to the house. They argue that the defendants manufactured, distributed, sold, and applied EIFS, and the defects to the home were caused by "the EIFS, installed during the construction of the home." As noted above, any failure to properly caulk or seal where the EIFS met the windows, doors, or other openings falls within the exclusion. Thus, the EIFS exclusion would bar coverage for any damage manifesting in 2000 or later.

Although Mid–Continent failed to conclusively establish as a matter of law when the alleged damage manifested for this Court to determine whether its policies apply, it is unnecessary under these fact. If the damage manifested prior to 2000, Mid–Continent would not have a duty to defend because Great American provided the relevant policies. If the damage manifested in 2000 or later, then the EIFS exclusion would bar coverage. Since Mid–Continent could never have a duty to defend under any alleged time-frame based on the "eight corners rule," the trial court properly granted its summary judgment. We overrule Summit's first issue with respect to Mid–Continent.

 In its second issue, Summit argues that because the Insurers had a duty to defend, the trial court improperly granted summary judgment on their duty to indemnify. The duty to indemnify is a distinct and separate duty from the duty to defend. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002); *Roman Catholic Diocese of Dallas, ex rel. Grahmann v. Interstate Fire & Cas. Co.*, 133 S.W.3d 887, 890 (Tex.App.-Dallas 2004, pet. denied). Although litigation on the duty to indemnify is often pursued after liability against the insured has been established in the underlying case, the insurer can resolve the indemnity issue before the establishment of liability by proving coverage is impossible in the underlying case. *Id.*; *see also Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex.1997) (holding that the duty to indemnify is justiciable before an insured's liability in the underlying matter is determined when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate the possibility the insurer will have a duty to indemnify).

Here, because a material fact issue exists regarding whether Great American has a duty to defend, the duty to indemnify is not an impossibility. Should the case proceed to trial, the facts established, falling within the purview of the policy, may invoke its duty to indemnify Summit. *Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex.App.-Fort Worth 2001, no pet.) (noting that duty to indemnify only arises after the insured has been adjudicated to be legally responsible for damages in a lawsuit). Therefore, because Summit may still be adjudicated legally responsible for damages in the underlying lawsuit and Great American may have a duty to indemnify it for the damages, the trial court improperly granted summary judgment on Great American's possible duty to indemnify. Thus, we sustain Summit's second issue regarding Great American.

However, because coverage is impossible under Mid–Continent's policies, the trial court properly concluded that it does not have a duty to indemnify. *Farmers Tex. County Mut. Ins. Co.*, 955 S.W.2d at 84. As such, we overrule Summit's second issue regarding Mid–Continent's duty to indemnify.

 In its third point, Summit alleges that the trial court erred in denying its motion for summary judgment with respect to Article 21.55 of the Texas Insurance Code.[3] Specifically, it contends that it is entitled to an eighteen percent penalty and reasonable attorneys' fees under the statute because the Insurers wrongfully refused and delayed payment of defense cost.

---

**3.** Texas Insurance Code Article 21.55 was repealed by the Texas Legislature effective April 1, 2005. The current version of the statute is located at Texas Insurance Code section 542.060.

In *TIG Insurance Co. v. Dallas Basketball, Ltd.,* 129 S.W.3d 232 (Tex.App.-Dallas 2004, pet. denied), after a detailed analysis of article 21.55, we concluded that any attempt to apply the statute's structure to a defense claim is unworkable and, based on the language of the statute, clearly unintended by the legislature. *Id.* at 239. Therefore, we concluded that article 21.55 is not applicable to an insured's claim for a defense. *Id.* At the time of our decision, we recognized that the holding was contrary to holdings of other state and federal courts. *Id.* Since our holding in *TIG Insurance Co.,* the Supreme Court of Texas has not provided guidance on this issue. *See N. County Mut. Ins. Co. v. Davalos,* 140 S.W.3d 685, 691 (Tex.2004) (stating that "we need not determine the scope of [article 21.55] to conclude that the court of appeals erred in affirming its award of damages and attorneys' fees under it"). However, two of our sister courts of appeal have relied on our holding in *TIG Insurance Co.* to reach the same conclusion. *Ulico Cas. Co. v. Allied Pilots Ass'n,* 187 S.W.3d 91, 104 (Tex.App.-Fort Worth 2005, pet. filed); *Service Lloyd's Ins. Co. v. J.C. Wink, Inc.,* 182 S.W.3d 19, 32–33 (Tex. App.-San Antonio 2005, pet. filed). Therefore, we overrule Summit's third issue.

## Conclusion

Having considered the arguments of both parties, we affirm the trial court's order granting Mid–Continent's summary judgment, but reverse the trial court's order granting summary judgment as to Great American's duty to defend and duty to indemnify and remand for further proceedings.