REVISED SEPTEMBER 7, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

No. 06-10727

**August 8, 2007**

Charles R. Fulbruge III
Clerk

ONEBEACON INSURANCE COMPANY, as Assignee of Potomac Insurance
Company of Illinois

Plaintiff - Appellee

v.

DON'S BUILDING SUPPLY INC

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas, Dallas

Before KING, DEMOSS, and OWEN, Circuit Judges.

PER CURIAM:

This diversity case involves important and determinative questions of
Texas law as to which there is no controlling Texas Supreme Court precedent.
Accordingly, we certify those unresolved questions to the Supreme Court of
Texas.

> CERTIFICATION FROM THE UNITED STATES COURT OF
> APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT
> OF TEXAS, PURSUANT TO TEXAS CONSTITUTION ARTICLE
> 5, § 3-C AND RULE 58 OF THE TEXAS RULES OF APPELLATE
> PROCEDURE

No. 06-10727

TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:

## I. STYLE OF THE CASE

The style of the case in which this certification is made is OneBeacon Insurance Company v. Don's Building Supply, Inc., Case No. 06-10727 in the United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Northern District of Texas, Dallas Division. Federal jurisdiction is based on diversity of citizenship.

## II. STATEMENT OF THE CASE

Plaintiff-appellee OneBeacon Insurance Company ("OneBeacon") seeks a declaration that it has no duty to defend or indemnify its insured, defendant-appellant Don's Building Supply, Inc. ("DBS"), in twenty-two lawsuits[1] that various homeowners (the "homeowners") have filed against DBS and other defendants. DBS sought a defense from OneBeacon under three occurrence-based commercial general liability insurance policies ("CGL policies") issued to DBS by Potomac Insurance Company of Illinois ("Potomac") and assigned by Potomac to OneBeacon. After initially providing a defense to DBS, OneBeacon has since withdrawn the defense, denied any further obligation to DBS under the policies, and filed this declaratory judgment action. DBS asserted a counterclaim in response, and each party filed a motion for summary judgment. The district court granted summary judgment to OneBeacon, and DBS now appeals.

The homeowners filed the underlying lawsuits in state courts throughout northern Texas from 2003 to 2005, asserting claims arising from water intrusion into the wall cavities of their homes due to an allegedly defective synthetic siding system known as Exterior Insulation and Finish Systems ("EIFS"). The EIFS

---

[1] OneBeacon initially sought such a declaration with regard to four additional lawsuits, but DBS has since withdrawn its request for a defense in those suits because they involved homes that were not constructed until after the end of the policies' coverage period.

at issue was distributed and sold by DBS and designed, manufactured, and marketed by other defendants. Specifically, the suits allege that the defendants knew that EIFS was defectively designed and would fail to serve as a weather-tight exterior cladding; that defendants knew that any wooden structures adjacent to EIFS would be at risk of wood rot and other damage because of the defective design; and that the defective EIFS allowed water to get inside the walls each time that it rained, causing extensive damage to the homes, a reduction in property values, and the need to retrofit or replace the EIFS. Each of the homeowners' petitions states that although the damage to the relevant home remained undiscovered until some point within two years of the filing of the suit,

> [the] injury to the home actually began to occur on the occasion of the first penetration of moisture behind the [EIFS] which would have been at such time as the improperly installed sealant joints and sealants began to fail, allowing moisture within the system. Such failure would have been within six months to one year after the application of the EIFS . . . and such injury was continuous thereafter. Continuous and repeated exposure of the moisture sensitive substrates of the home to the elements, specifically rain and wind-driven rain, has resulted in an ongoing exposure to moisture and accumulation of water behind the [EIFS]. Each repeated moisture intrusion event has contributed to and worsened the damage to Plaintiffs' property.[2]

Faced with these lawsuits, DBS sought a defense from OneBeacon under the CGL policies, which cover a combined policy period from December 1, 1993 to December 1, 1996 (the "policy period"). All of the houses involved in the twenty-two underlying suits had EIFS installed at some point during the policy period. In relevant part, the CGL policies obligate OneBeacon to defend DBS in, and indemnify DBS against any liability arising from, any suit brought against

---

[2] One of the suits uses different language but makes similar allegations.

DBS to recover for "property damage" that (1) is caused by an "occurrence" and (2) "occurs" during the policy period.[3] "Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The central question before the district court was whether the property damage described in the underlying suits is alleged to have occurred within the policy period such that OneBeacon's duty to defend DBS was triggered under the CGL policies. To resolve this question, the court first had to identify the time at which Texas law deems property damage to occur for purposes of a CGL policy, and the court determined that it was bound by Fifth Circuit precedent holding that "property damage 'occurs' within the meaning of a CGL policy [under Texas

---

[3] In relevant part, the policies provide:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages . . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
>
> (2) The "bodily injury" or "property damage" occurs during the policy period.

law]. . . when the damage becomes manifest or identifiable." Guar. Nat'l Ins. Co. v. Azrock Indus. Inc., 211 F.3d 239, 246-47 (5th Cir. 2000); see also Am. Home Assurance Co. v. Unitramp Ltd., 146 F.3d 311, 313 (5th Cir. 1998).

The district court then observed that each of the homeowners in the underlying suits pleaded the discovery rule in order to avoid the application of the statute of limitations for each of such homeowners' claims. See generally Burns v. Thomas, 786 S.W.2d 266, 267 (Tex. 1990) (discussing the discovery rule). All but one of the homeowners pleaded the discovery rule as follows:[4]

### Discovery Rule Applies

> The injury to Plaintiffs was inherently undiscoverable in that the defects inherent in the EIFS are latent. The defects cause damage within the wall cavity which is not readily apparent to one examining the exterior of the EIFS surface. As a result, the named Plaintiffs would not, in the exercise of reasonable diligence, immediately perceive, observe or discover EIFS's defects.

Each petition indicates that the damage was discovered shortly before the filing of the relevant suit, and to avoid the statute of limitations for each claim but one, the damage had to be discoverable no earlier than two years before the filing of the suit.[5] Because the first of the suits was filed on August 13, 2003, none of the petitions alleges damage that could have been discovered before

---

[4] The other homeowner's petition similarly alleges that "no reasonable means exist that would enable homeowners, such as Plaintiffs, to discover the damage occurring beneath the exterior surfaces of EIFS; thus, making the defect inherently nondiscoverable."

[5] A two-year limitations period applies to the underlying suits' claims for negligence, gross negligence, and violations of the Texas DTPA. TEX. CIV. PRAC. & REM. CODE § 16.003(a) (negligence and gross negligence); TEX. BUS. & COM. CODE § 17.565 (DTPA). A four-year limitations period applies to the fraud-based claims asserted in the underlying suits, TEX. CIV. PRAC. & REM. CODE § 16.004(a), but this difference did not affect the district court's analysis.

August 13, 2001, which was well after DBS's policy period expired in December 1996. Accordingly, the district court held that none of the pleadings alleges property damage that manifested during the policy period.

The district court also rejected DBS's contention that OneBeacon's duty to defend and indemnify was triggered by the homeowners' claims for loss of use of their property. The CGL policies dictate that a loss of use of damaged property is deemed to occur at the time of the injury that caused it and that a loss of use of undamaged property is deemed to occur at the time of the occurrence that caused it. With regard to both types of property, the district court determined that the timing of the loss of use must be measured in the same way as the overall property damage—by looking to the time at which the damage causing the loss of use manifested. Because the court found that the pleadings do not allege property damage that manifested during the policy period, the court held that OneBeacon has no duty to defend or indemnify DBS under any of the CGL policies' provisions.

## III. LEGAL ISSUES

The Supreme Court of Texas has not yet adopted a particular rule for determining when property damage occurs for purposes of an occurrence-based liability policy, see Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 853 n.20 (Tex. 1994), and the Texas appellate courts are split on the appropriate rule. The Courts of Appeals in Dallas, San Antonio, and Austin have held that property damage occurs at the time that the damage manifests, which the courts have further defined as the time that the damage becomes apparent or identifiable. See, e.g., Summit Custom Homes, Inc. v. Great Am. Lloyds Ins. Co., 202 S.W.3d 823, 827 (Tex. App.--Dallas 2006, pet. filed); State Farm Fire & Cas. Co. v. Rodriguez, 88 S.W.3d 313, 322 (Tex. App.--San Antonio 2002, pet. denied); State Farm Mut. Auto. Ins. Co. v. Kelly, 945 S.W.2d 905, 910 (Tex. App.--Austin 1997, writ denied); Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins.

Co., 852 S.W.2d 252, 258 (Tex. App.--Dallas 1993, writ denied); Dorchester Dev. Corp. v. Safeco Ins. Co., 737 S.W.2d 380, 383 (Tex. App.--Dallas 1987, no writ).

The Courts of Appeals in Houston, however, have in two cases rejected this "manifestation rule" and instead applied an "exposure rule" to harms caused by continuous or repeated exposure to conditions during a policy period. In Pilgrim Enterprises, Inc. v. Maryland Casualty Co., 24 S.W.3d 488, 490-91 (Tex. App.--Houston [1st Dist.] 2000, no pet.), property owners alleged personal injury and property damage from long-term exposure to chemicals that entered the soil and groundwater from a neighboring dry cleaning facility. After surveying the Texas cases that applied the manifestation rule, the court held that "for CGL policies covering continuous or repeated exposure to conditions, [damage] can occur as the exposure takes place." Id. at 497-98. Similarly, in Pine Oak Builders, Inc. v. Great American Lloyds Insurance Co., No. 14-05-00487-CV, 2006 WL 1892669, *7-8 (Tex. App.--Houston [14th Dist.] July 6, 2006, no pet.), the court applied the exposure rule to a case involving property damage from water intrusion due to defective EIFS siding.

Before the Houston Courts of Appeals adopted the exposure rule, the Fifth Circuit made its "Erie guess" on the matter and applied the manifestation rule, relying principally on the Dallas Court of Appeals cases. See Azrock, 211 F.3d at 246-47; Unitramp, 146 F.3d at 313; Snug Harbor, Ltd. v. Zurich Ins., 968 F.2d 538, 544 (5th Cir. 1992). Given the present split in the Texas Courts of Appeals, we believe that the appropriate rule is better determined by the Supreme Court of Texas. Authoritative determination of the appropriate rule is necessary to resolve the remaining issue of whether the underlying pleadings allege that property damage occurred within the policy period such that OneBeacon has a duty to defend and indemnify DBS in the underlying suits.

Moreover, as the Supreme Court of Texas has not yet weighed in on the proper rule to be applied, it has not yet had occasion to clarify its scope. This

case thus presents the additional determinative issue of whether property damage can be deemed to have occurred under the governing rule during a time in which the pleadings state that the damage was undiscoverable for purposes of the discovery rule. Although the petitions in the underlying suits allege that property damage began shortly after the EIFS installation and continued and progressed with each intrusion of water, which took place during the policy period, they also allege that the damage was hidden from view by the undamaged external EIFS surface and was not discoverable or readily apparent to someone looking at that surface until after the policy period ended.

The Texas Court of Appeals in Dallas considered the impact of the discovery rule in Summit Custom Homes, which involved a claimed duty to defend based on liability insurance that covered the period from 1996 to 2000. 202 S.W.3d 823. The focus of the parties' arguments centered on whether the underlying pleadings alleged actual damage caused by EIFS siding that manifested in 1996, and the court found that the pleadings did not, both because they did not specifically mention damage occurring in that year and because one of the petitions invoked the discovery rule, which was in a form similar to the invocation in this case.[6]   Id. at 828. But despite the discovery rule's apparent applicability in that case to at least the year 1996, the court ultimately found that the insurer failed to establish as a matter of law that the damage did not manifest during any of the policy years, including 1996. See id. at 828, 830.

---

[6] The petition stated:
> Each and every claim made by the Plaintiffs herein is subject to the discovery rule because the defects of which Plaintiffs complain were latent and/or otherwise undiscoverable. The defects cause damage within the wall cavity which is not readily apparent to one examining the exterior of the EIFS surface. As a result, the named Plaintiffs would not, in the exercise of reasonable diligence, immediately perceive, or discover the defects complained of herein.

Summit Custom Homes, 202 S.W.3d at 828.

Our court has interpreted another Dallas Court of Appeals case as establishing that hidden damage is not apparent for purposes of the manifestation rule. See Unitramp, 146 F.3d at 314. Cullen/Frost involved allegations of warped floors and rotten woodwork, among other structural problems, that were only discovered after a professional inspection, and the court recognized "that [liability] coverage is not afforded unless an identifiable damage or injury, other than merely causative negligence, takes place during the policy period." 852 S.W.2d at 258. In Unitramp, our court rejected the claim that the use of the word "identifiable" as the relevant gauge in Cullen/Frost means "capable of being known by testing." Unitramp, 146 F.3d at 314. Instead, we held that "identifiable" was synonymous with "manifest" and "apparent," which we further defined as "capable of easy perception." Id. Our court then concluded that "in Cullen/Frost, the structural deterioration in condominium units was not apparent because it was hidden; the floor displacement and rotten woodwork were not readily observable by the senses. Accordingly, the problems did not become apparent until the owners conducted inspections." Id.

As with the question of the proper rule for determining when property damage is deemed to occur under Texas law, the impact of the discovery rule's invocation on that analysis is also better decided by the Supreme Court of Texas. A ruling on this issue is determinative of whether the pleadings in the underlying suits allege property damage that occurred during the policy period, thereby determining whether OneBeacon has a duty to defend and indemnify DBS. If the underlying pleadings' allegations of hidden but progressing damage are sufficient to allege covered damage notwithstanding the undiscoverability language, then OneBeacon has a duty to defend and indemnify DBS. If instead the allegations that the damage was undiscoverable and not readily apparent until after the policy period are sufficient to allege that the damage did not occur

during the policy period, then OneBeacon has no duty to defend or indemnify DBS.

## IV. QUESTIONS CERTIFIED

We hereby certify the following two determinative questions of law to the Supreme Court of Texas:

1. When not specified by the relevant policy, what is the proper rule under Texas law for determining the time at which property damage occurs for purposes of an occurrence-based commercial general liability insurance policy?

2. Under the rule identified in the answer to the first question, have the pleadings in lawsuits against an insured alleged that property damage occurred within the policy period of an occurrence-based commercial general liability insurance policy, such that the insurer's duty to defend and indemnify the insured is triggered, when the pleadings allege that actual damage was continuing and progressing during the policy period, but remained undiscoverable and not readily apparent for purposes of the discovery rule until after the policy period ended because the internal damage was hidden from view by an undamaged exterior surface?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.