**DON'S BUILDING SUPPLY, INC., Appellant,**

v.

**ONEBEACON INSURANCE COMPA-NY, As Assignee of Potomac Insurance Company of Illinois, Appellee.**

No. 07–0639.

Supreme Court of Texas.

Argued Feb. 7, 2008.

Decided Aug. 29, 2008.

Rehearing Denied Nov. 14, 2008.

Thomas B. Alleman, Winstead Sechrest & Minick, P.C., Dallas, TX, for Appellant.

Marcus Jarrett Coleman, Dallas, Michelle Macarthur Castro, Fort Worth, Philip Roderick Lamb, Quilling, Selander, Cummiskey & Lownds, Dallas, Tim Headley, and Gene F. Creely II, Cozen O'Connor, Houston, TX, for Appellee.

J. Ross Hostetter, Burdin Mediations, Dallas, TX, for person interested in case.

Paul E. Ridley, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Don Martinson, Fanning Harper & Martinson, P.C., Dallas, TX, for Amicus Curiae.

Justice WILLETT delivered the opinion of the Court.

This insurance-coverage dispute presents two certified questions from the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit asks generally when property damage "occurs" under Texas law for purposes of an occurrence-based commercial general liability insurance policy, a question this Court has never answered. More specifically, is an insurer's duty to defend triggered where damage is alleged to have occurred during the policy period but was inherently undiscoverable until after the policy expired? As to this policy, which focuses on when damage comes to pass, not when damage comes to light, we answer "yes"—the insurer's duty is triggered under Texas law; the key date is when injury happens, not when someone happens upon it.

## I. Background

The relevant facts are set out in the Fifth Circuit's opinion certifying the questions to us.[1] Don's Building Supply, Inc. (DBS) sells and distributes a synthetic stucco product known as an Exterior Insulation and Finish System (EIFS). This siding system was installed on various homes from December 1, 1993 to December 1, 1996, during which DBS was covered by comprehensive general liability (CGL) policies issued by Potomac Insurance Company of Illinois and assigned to OneBeacon Insurance Company (OneBeacon).[2] From 2003 to 2005, various Texas homeowners filed state-court lawsuits against DBS, alleging the EIFS was defective and not weather-tight, thus allowing moisture to seep into wall cavities behind the siding and causing wood rot and other damages. The homeowners argue these injuries "actually began to occur on the occasion of the first penetration of moisture behind" the EIFS, which they say was "within six months to one year after the application of the EIFS."[3] The alleged result of this ongoing moisture exposure was extensive damage to the homes, reduced property values, and the need to

---

**1.** *OneBeacon Ins. Co. v. Don's Bldg. Supply, Inc.,* 496 F.3d 361 (5th Cir.2007).

**2.** *Id.* at 362. The coverage consisted of three consecutive one-year policies.

**3.** *Id.* (quoting the homeowners' petitions).

retrofit or replace the EIFS.[4]

In their suits alleging negligence, fraud, and violations of the Texas Deceptive Trade Practices Act,[5] the homeowners seek to avoid the statutes of limitations for their various claims by pleading the discovery rule, arguing the home damage was "hidden from view" by the siding's undamaged exterior and "not discoverable or readily apparent to someone looking at that surface until after the policy period ended." [6]

OneBeacon initially provided a defense to DBS but then filed a declaratory judgment action in federal district court seeking a ruling that it had no duty to defend and indemnify under the CGL policies. The court agreed with OneBeacon that the duty does not arise until the damage becomes identifiable.[7] DBS appealed to the Fifth Circuit, which certified the coverage trigger-date questions to us.

## II. Discussion

### A. First Certified Question

The Fifth Circuit first asks:

When not specified by the relevant policy, what is the proper rule under Texas law for determining the time at which property damage occurs for purposes of an occurrence-based commercial general liability insurance policy?

We construe insurance policies according to the same rules of construction that apply to contracts generally.[8] Effectuating the parties' expressed intent is our primary concern.[9] If an insurance contract uses unambiguous language, we must enforce it as written.[10] If, however, a contract is susceptible to more than one reasonable interpretation, we will resolve any ambiguity in favor of coverage.[11] Policy terms are given their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning.[12] "No one phrase, sentence, or section [of the policy] should be isolated from its setting and considered apart from the other provisions." [13] In addition, "we must give the policy's words their plain meaning, without inserting additional provisions into the contract." [14]

With these principles in mind, we turn to the relevant policy language. The first page provides a one-year policy period with designated start and end dates. The policy provides "bodily injury" and "property damage" coverage as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and

4. *Id.*

5. *See id.* at 363 n. 5.

6. *Id.* at 365.

7. *OneBeacon Ins. Co. v. Don's Bldg. Supply, Inc.,* 516 F.Supp.2d 615, 629–30 (N.D.Tex. 2006).

8. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker,* 246 S.W.3d 603, 606 (Tex.2008).

9. *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994).

10. *See Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984).

11. *Id.* at 938.

12. *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 736 (Tex.1990).

13. *Forbau,* 876 S.W.2d at 134.

14. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker,* 246 S.W.3d 603, 606 (Tex.2008) (footnotes omitted).

duty to defend any "suit" seeking those damages.

The policy further provides:

This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2) The "bodily injury" or "property damage" occurs during the policy period.

■■■ The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." We recently noted, in construing the same CGL language, that "[a]n accident is generally understood to be a fortuitous, unexpected, and unintended event." [15] The policy's requirement that property damage be caused by an "occurrence" limits coverage in at least two respects. First, because the occurrence must be an "accident," coverage for intentional torts is excluded.[16] Second, because a single occurrence can be "an accident" and consist of "continuous or repeated exposure to substantially the same general harmful conditions," the definition of occurrence serves to limit the number of occurrences an insured can claim for what the policy deems to be a single accident.[17] This limitation is sometimes important because the dollar limits of the policy include an aggregate limit and also a lower dollar limit per occurrence.[18]

The policy defines "property damage" to mean:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

■■■ Considering these provisions together and reading them for their plain meaning, we hold that property damage under this policy occurred when actual physical damage to the property occurred. The policy says as much, defining property damage as "[p]hysical injury to tangible property," and explicitly stating that coverage is available if and only if " 'property damage' occurs during the policy period." So in this case, property damage occurred when a home that is the subject of an underlying suit suffered wood rot or other physical damage. The date that the physical damage is or could have been discovered is irrelevant under the policy.

We recognize, however, the existence of caselaw discussing when the duty to defend is "triggered" under occurrence-

---

15. *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex.2007).

16. *See id.* ("We have further said that an intentional tort is not an accident and thus not an occurrence regardless of whether the effect was unintended or unexpected.").

17. *See, e.g., Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 853–54 n. 21 (Tex.1994) (noting that language in policies defining an "occurrence" or a "claim occurrence" as an accident "including continuous or repeated

exposure to substantially the same general conditions" or a "series of acts or occurrences arising out of one event" is intended to limit the number of claims the insured can make for what the policy deems a single occurrence).

18. The policy covering December 1993 to December 1994, for example, has a $1 million aggregate limit and a $500,000 limit per occurrence.

based and other policies. The Fifth Circuit notes that courts have not uniformly resolved this issue.[19] To some extent, these varying approaches reflect perceived differences in the policy language under review.[20] The varying approaches also reflect different factual circumstances, with some courts not facing, for example, the difficulty encountered in the pending case by an alleged delay between the time of property damage and the discovery of that damage.[21]

■■■ Many courts agree with the analysis we adopt today, sometimes called the "actual injury" or "injury-in-fact" approach, that the insurer must defend any claim of physical property damage that occurred during the policy term.[22] Other

**19.** 496 F.3d at 364; *see also Garcia,* 876 S.W.2d at 853 n. 20 (noting that "courts across the nation considering the coverage trigger issue for continuing occurrences have disagreed considerably in recent years").

**20.** *See, e.g., Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.,* —— S.W.3d ——, ——, 2006 WL 1892669 (Tex.App.-Houston [14th Dist.] 2006, pet. granted) (rejecting manifestation rule adopted in earlier cases in part because definition of "occurrence" in the policy under review was different from policy language in earlier cases); *EnergyNorth Natural Gas, Inc. v. Underwriters at Lloyd's,* 150 N.H. 828, 848 A.2d 715, 719–23 (2004) (applying injury-in-fact rule to three occurrence-based policies in issue and exposure rule to two accident-based policies).

**21.** *See* 7 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 102:22 (2005) (hereinafter "COUCH ON INSURANCE") (noting particular policy construction difficulties encountered "where there is a lengthy interval between an injury from a wrongful act and the manifestation of that injury" and that in "delayed manifestation of injury cases, there is a marked difference of opinion, sometimes within the same jurisdiction, as to when coverage is triggered").

**22.** *See Transcon. Ins. Co. v. W.G. Samuels Co.,* 370 F.3d 755, 758 (8th Cir.2004) ("The Kansas Supreme Court has adopted an injury-in-fact rule for purposes of determining when coverage is triggered under a CGL policy. Under this rule, insurance coverage is triggered on the date when an actual injury and damage occurs, even if the injury has not yet been discovered or become manifest." (citing *Scott v. Keever,* 212 Kan. 719, 512 P.2d 346, 351–52 (1973))); *Trizec Props., Inc. v. Biltmore Constr. Co.,* 767 F.2d 810, 813 (11th Cir.1985) (holding under Florida law that actual injury rule applies to CGL policy); *Mut.*

*Fire, Marine & Inland Ins. Co. v. Safeco Ins. Co.,* 473 So.2d 1012, 1013–14 (Ala.1985) (reversing summary judgment for insurer where homeowner suing insured claimed that termite damage had occurred during policy period, even though damage was not discovered until after policy expired, because "the insurance carrier with the policy in effect at the time of damage is responsible for the defense and indemnity of the insured"); *Hoang v. Assurance Co. of Am.,* 149 P.3d 798, 800–01 (Colo.2007) (holding that the CGL policy in effect at the time of property damage to the foundation of the home built by the insured covered claim by homeowner, even though damage was not discovered until after policy expired and even though plaintiff had purchased the home after policy expired); *Sentinel Ins. Co. v. First Ins. Co. of Haw.,* 76 Hawai'i 277, 875 P.2d 894, 915, 917 (1994) (adopting injury-in-fact trigger "for all standard CGL policies," and also recognizing that continuous trigger rule may be employed where injury "occurs continuously over a period covered by different insurers or policies"); *Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 258 Ill.Dec. 792, 757 N.E.2d 481, 502–03 (2001) (holding, under CGL policies covering "physical injury to tangible property," that claims against insured that it manufactured defective plumbing system were covered if the buildings in issue suffered water damage due to leaks during the policy period, regardless of when the plumbing systems were installed, because plain language of policies state "that the insurable event which gives rise to the insurers' obligation to provide coverage is the physical damage to tangible property"); *Gelman Scis., Inc. v. Fid. & Cas. Co. of N.Y.,* 456 Mich. 305, 572 N.W.2d 617, 628 (1998) ("The standard CGL policy language, providing coverage for property damage occurring during the policy period, unambiguously dictates application of an injury-in-fact trigger of coverage."), *reh'g*

courts, including several Texas appellate courts, have followed a "manifestation rule" that imposes a duty to defend only if the property damage became evident or discoverable during the policy term.[23] The manifestation approach takes different forms, with some courts having the rule turn on when the damage is *actually* discovered, and others looking to when the damage *could have been* discovered.[24]

*granted on other grounds*, 456 Mich. 1230, 576 N.W.2d 168 (1998), *overruled on other grounds by Wilkie v. Auto–Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776 (2003); *N. States Power Co. v. Fid. & Cas. Co. of N.Y.*, 523 N.W.2d 657, 662 (Minn.1994) (stating that "Minnesota follows the 'actual injury' or 'injury-in-fact' theory to determine which policies have been triggered by an occurrence causing damages" because "this theory is the most consistent with standard CGL policy language"); *EnergyNorth Natural Gas*, 848 A.2d at 719–23 (applying injury-in-fact rule to occurrence-based CGL policies); *Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co.*, 534 N.W.2d 28, 35–36 (N.D.1995) (rejecting manifestation rule in first-party insurance case, and holding that "a real but undiscovered loss or damage, proved in retrospect to have commenced during the policy period, triggers coverage, irrespective of the time the loss or damage became manifest"); *St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 923 P.2d 1200, 1209–11 (1996) (holding injury-in-fact rule applicable to various CGL policies where insured sought coverage for costs incurred in investigating and correcting environmental contamination); *Joe Harden Builders, Inc. v. Aetna Cas. & Sur. Co.*, 326 S.C. 231, 486 S.E.2d 89, 91 (1997) (holding that coverage under occurrence policy "is triggered at the time of an injury-in-fact and continuously thereafter to allow coverage under all policies in effect from the time of injury-in-fact during the progressive damage"); *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wash.2d 452, 760 P.2d 337, 345 (1988) ("Washington case law hold[s] that the time of an occurrence for insurance coverage purposes is determined by when damages or injuries took place.").

**23.** *E.g., Summit Custom Homes, Inc. v. Great Am. Lloyds Ins. Co.*, 202 S.W.3d 823, 827 (Tex.App.-Dallas 2006, pet. filed) (holding, in case where home builder sought coverage for EIFS claim under CGL policies, that "[i]f [property] damages are not manifested during the policy period, then there is no 'occurrence' during the policy period."); *State Farm*

*Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 322–23 (Tex.App.-San Antonio 2002, pet. denied) (following manifestation rule and stating that property damage is manifested under homeowners' policy when it becomes "apparent"); *Closner v. State Farm Lloyds*, 64 S.W.3d 51, 53 (Tex.App.-San Antonio 2001, no pet.) (holding that covered losses under homeowner's policy "are deemed to occur when the damage first becomes apparent" and therefore homeowners have "the burden to prove their loss manifested during the policy period they plead"); *State Farm Mut. Auto. Ins. Co. v. Kelly*, 945 S.W.2d 905, 910 (Tex. App.-Austin 1997,. writ denied) (holding that loss under automobile policy "occurs when the injury or damage to the property is manifested"); *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 258 (Tex.App.-Dallas 1993) (holding that occurrence under CGL policies "takes place when the property damage manifests itself"), *writ denied*, 889 S.W.2d 266 (Tex.1994) (per curiam); *Dorchester Dev. Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380, 381, 383 (Tex.App.-Dallas 1987, no writ) (holding, under policy providing coverage for "property damage ... caused by an occurrence," that claim against general contractor was not covered because coverage is not available "unless the property damage manifests itself, or becomes apparent, during the policy period"); *see also Am. Home Assurance Co. v. Unitramp Ltd.*, 146 F.3d 311, 313–14 (5th Cir.1998) (holding that manifestation rule is applicable to occurrence-based policy governed by Texas law); *Textron, Inc. v. Aetna Cas. & Sur. Co.*, 723 A.2d 1138, 1142–44 (R.I.1999). We note that arguably the leading case adopting the manifestation approach, *Eagle–Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 682 F.2d 12 (1st Cir.1982), concerned asbestos-related bodily injury claims, and as discussed below, *see infra* note 32 and accompanying text, we express no view on whether the rule for determining the triggering of coverage is the same for bodily injury and property damage claims under the OneBeacon policy.

**24.** *See Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 853 n. 20 (Tex.1994) (dis-

Even those courts favoring the latter manifestation trigger appear to take differing views of how easily discoverable the damage or injury must be.[25]

We also note that decisions sometimes cited as following the manifestation rule, and which indeed use a form of the word "manifest" in their analysis, do not actually follow the manifestation rule as opposed to the actual-injury rule, because they were not concerned with *latent* damage where these two rules diverge. Instead, these cases merely hold that the time of the injury or damage, as opposed to the time of the alleged negligent conduct that caused the injury, is the triggering event under the policy. These cases, when carefully reviewed, may actually be more aligned with the actual-injury rule than with the manifestation rule, and appear to use a form of the verb "manifests" merely as a synonym for "results in" or "leads to," rather than drawing a distinction between the actual occurrence of damage and the later discovery or obviousness of damage.[26]

Other courts, including two Texas courts of appeals,[27] follow an "exposure rule" that

cussing *Dorchester,* 737 S.W.2d at 383, *see supra* note 23, and noting, in case involving personal injury claim, that some courts have followed a "pure" or "strict" manifestation rule based on actual discovery of injury, while others have followed "relaxed" manifestation rule based on when discovery of injury was possible).

**25.** *Compare Dorchester,* 737 S.W.2d at 383 (stating that coverage is available if damage or injury becomes "identifiable" within the policy period) *with Unitramp,* 146 F.3d at 311 (stating that under manifestation rule "[t]he date of occurrence is when the damage is capable of being easily perceived, recognized and understood").

**26.** For example, it appears that two cases discussed by the court of appeals in *Dorchester* did not actually adopt the manifestation rule. In *Millers Mut. Fire Ins. Co. of Tex. v. Ed Bailey, Inc.,* the Idaho Supreme Court held that where the insured installed foam in a building during the term of a CGL policy, and a fire allegedly caused by the foam occurred after the policy expired, the property damage claim was not covered because the policy defined property damage as "physical injury to or destruction of tangible property which occurs during the policy period" and "no actual physical damage to the structure in this case occurred within the policy period." 103 Idaho 377, 647 P.2d 1249, 1250, 1253 (1982) (discussed in *Dorchester,* 737 S.W.2d at 383). The court did make reference to the time that the alleged negligence "manifests itself," but was merely distinguishing the time of the negligent conduct from "the time that the damage occurs," *id.* at

1253; it was not choosing between the actual-injury rule and the manifestation rule. The same can be said for *Travelers Ins. Co. v. C.J. Gayfer's & Co.,* 366 So.2d 1199 (Fla.Dist.Ct. App.1979) (discussed in *Dorchester,* 737 S.W.2d at 383). In *Gayfer's,* the Florida court held that a claim against a plumbing contractor was not covered where a plumber's allegedly negligent work on a drainage system took place during the policy period but the system failed and water damage to plaintiff's store occurred after the policy had expired. *Id.* The court did state that an "occurrence" under the policy "is commonly understood to mean the event in which negligence manifests itself in property damage or bodily injury." *Id.* at 1202. But again, read in context, the court was not adopting the manifestation rule in lieu of the injury-in-fact rule, but was distinguishing between the date of the insured's alleged negligent work, which occurred during the policy period, and the date of the property damage, which occurred and became immediately evident upon occurrence, after the policy period had expired. The Eleventh Circuit has since held that the injury-in-fact rule applies to CGL policies under Florida law. *Trizec Props., Inc. v. Biltmore Constr. Co.,* 767 F.2d 810, 813 (11th Cir. 1985).

**27.** *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.,* —— S.W.3d ——, ——, 2006 WL 1892669 (Tex.App.-Houston [14th Dist.] 2006, pet. granted) (adopting exposure rule in case involving coverage for EIFS claims under CGL policies); *Pilgrim Enters., Inc. v. Md. Cas. Co.,* 24 S.W.3d 488, 497–99 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (adopting exposure rule for deciding whether physical

finds coverage if the plaintiff is exposed to whatever agent ultimately results in personal injury or property damage during the policy period. Again, what some courts call the "exposure rule" may actually be what others would call the injury-in-fact rule.[28] Still other courts adopt other approaches, including multiple trigger rules,[29] and a rule that looks to the date of the alleged negligent conduct rather than the date of the actual injury to the claimant.[30] In cases involving continuous losses, California follows a manifestation rule for first-party property insurance claims (such as claims under a homeowners policy) but

a continuous-injury rule for liability insurance policies (such as claims under CGL policies).[31] A related if not overlapping body of law, which we do not explore today, addresses when coverage is triggered on bodily injury claims under CGL and other policies.[32] As occurred in *Lamar Homes, Inc. v. Mid–Continent Casualty Co.*, we are again asked by the Fifth Circuit to construe a widely used CGL policy where "unfortunately there is no consensus on the policy's meaning under the circumstances posed here."[33]

As for the manifestation rule, the rule urged by OneBeacon and followed by most

injury and property damage claims are covered by CGL policy, where claims are based on continuous or repeated exposure to dry cleaning fluid).

28. *E.g., Ins. Co. of N. Am. v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212, 1222 n. 18 (6th Cir.1980) ("[W]hen courts are dealing with property damage situations where damages slowly accumulate, courts have generally applied the exposure theory. So long as there is tangible damage, even if minute, courts have allowed coverage from that time."), *clarified in part*, 657 F.2d 814 (6th Cir.1981).

29. *E.g., Harford County v. Harford Mut. Ins. Co.*, 327 Md. 418, 610 A.2d 286, 294–95 (1992) (holding that coverage under CGL policies for environmental contamination claims is available if either the property damage occurred or discovery or manifestation of the damage occurred during the policy period); *Owens–Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437, 650 A.2d 974, 984 (1994) (holding "that claims of asbestos-related property damage from installation through discovery or remediation (the injurious process) trigger the policies on the risk throughout that period"). The leading case adopting the multiple trigger approach, *Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034 (D.C.Cir.1981) (Bazelon, J.) concerned asbestos-related bodily injury claims, and as discussed below, *see infra* note 32 and accompanying text, we express no view on whether the rule for determining the triggering of coverage is the same for bodily injury and property damage claims.

30. *See Audubon Coin & Stamp Co. v. Alford Safe & Lock Co.*, 230 So.2d 278, 279–80 (La. Ct.App.1969) (holding, where customer of insured safe company sued for negligent installation of safe, that policy in effect at time of alleged negligent installation of safe, rather than policy in effect at time of burglary, covered claim).

31. *See Montrose Chem. Corp. of Cal. v. Admiral Ins. Co.*, 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878, 880, 904 (1995) (distinguishing *Prudential–LMI Commercial Ins. v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990)).

32. *See, e.g., Guar. Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243–48 (5th Cir. 2000) (discussing various theories of coverage in progressive disease context, and concluding that rules for coverage of personal injury and property damage claims are different); *Md. Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 627 (2d Cir.1994) (agreeing that "concepts of bodily injury may not be imported wholesale into the property damage context" when determining when damage occurs under CGL policy); *but see Montrose Chemical*, 42 Cal.Rptr.2d 324, 913 P.2d at 888 (concluding that coverage is the same for bodily injury and property damage claims under CGL policy). We express no opinion on whether the coverage rule for determining if a claim occurs during the term of the OneBeacon policy is the same for bodily injury and property damage claims.

33. 242 S.W.3d 1, 5 (Tex.2007).

Texas cases to date, the policy before us simply makes no provision for it. The policy in straightforward wording provides coverage if the property damage "occurs during the policy period," and further provides that property damage means "[p]hysical injury to tangible property." Whatever practical advantages a manifestation rule would offer to the insured or the insurer, the controlling policy language does not provide that the insurer's duty is triggered only when the injury manifests itself during the policy term, or that coverage is limited to claims where the damage was discovered or discoverable during the policy period.

Similarly, the policy's language does not support adoption of an exposure rule, at least not where there is "physical injury to tangible property" as alleged in this case. Again, the policy provides coverage if the " 'property damage' occurs during the policy period." The policy does not state that coverage is available if property is, during the policy period, exposed to a process, event, or substance that later results in bodily injury or physical injury to tangible property.

We therefore decline to recognize a manifestation rule or exposure rule for the property damage claims alleged under this policy.[34] This policy links coverage to damage, not damage detection. Engrafting a manifestation rule to limit coverage-by conditioning coverage on the observations of a third-party claimant-would blur the distinction between this occurrence-based policy and a claims-made policy. If the manifestation rule offers advantages of ease of application or proof for the insurer or insured, insurance companies might consider adopting policies where coverage depends on manifestation of damage, and seeking approval of such policies by Texas insurance regulators.[35] We note, however, that the manifestation rule does not eliminate the need to address sometimes nettlesome fact issues. In fact, the actual-injury rule may well make claims *more* predictable insofar as one type of manifestation trigger turns not on when the claimant actually identified the damage but rather on when the damage was *capable* of identification.[36]

Pinpointing the moment of injury retrospectively is sometimes difficult, but we cannot exalt ease of proof or administrative convenience over faithfulness to the policy language; our confined task is to review the contract, not revise it. Our prevailing concern is not one of policy but

---

34. In this case there may be little practical difference between an actual-injury rule and an exposure rule, because, as the Fifth Circuit notes, the homeowners' petitions alleged that "injury to the home actually began to occur on the occasion of the first penetration of moisture behind the [EIFS] which would have been at such time as the improperly installed sealant joints and sealants began to fail, allowing moisture within the system." *OneBeacon*, 496 F.3d at 362. If the homeowners are alleging that wood rot or other physical damage to their homes began immediately or almost immediately after the initial moisture exposure occasioned by EIFS leakage, there may be no real-world distinction between application of an exposure rule and an actual-injury rule in this case. *See EnergyNorth Natural Gas, Inc. v. Underwriters at Lloyd's*, 150 N.H. 828, 848 A.2d 715, 718 (2004) (recognizing little difference between injury-in-fact and exposure theories where contamination begins almost immediately after release of hazardous materials).

35. *See* 7 COUCH ON INSURANCE § 102:22 ("The parties may, of course, make their intent explicit in the contract of insurance by stating that coverage will be triggered by the occurrence of the harm producing event, by initial manifestation of damages, or by requiring that both occur within the policy period.").

36. *See Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 257 (Tex.App.-Dallas 1993, writ denied).

of law, and we must honor the parties' chosen language-covering third-party claims if damage to the claimant's property occurred during the policy period. The policy asks when damage happened, not whether it was manifest, patent, visible, apparent, obvious, perceptible, discovered, discoverable, capable of detection, or anything similar. Occurred means when *damage* occurred, not when *discovery* occurred. In this case, property damage occurred when the home in question suffered wood rot or some other form of physical damage.

Looking to the date of actual injury, besides being consistent with the policy terms, is also consistent with scholarly authority. To quote one leading insurance law treatise, "the time of the occurrence of the accident within an indemnity policy is generally not considered to be the time the wrongful act was committed but the time when the complaining party was actually damaged."[37] To quote the other leading treatise,

> Focusing on the date injury manifests itself basically operates to provide certainty to insurers, but the injury-in-fact approach probably is more technically in tune with the spirit of the parties' actual intentions, and with the insured's expectations, based on frequently encountered policy language tying bodily "injury" or

property "damage" to the concept of "occurrence."[38]

This treatise goes on to state that the manifestation rule "obviously gives short shrift to the specific terms inserted in the policy to address the risk exposure."[39] Texas law does not. Our goal is to effectuate the parties' intent as expressed in the contract they executed.[40]

■ Finally, we stress that we do not attempt to fashion a universally applicable "rule" for determining when an insurer's duty to defend a claim is triggered under an insurance policy, as such determinations should be driven by the contract language-language that obviously may vary from policy to policy.

## B. Second Certified Question

■ The Fifth Circuit next asks:

Under the rule identified in the answer to the first question, have the pleadings in lawsuits against an insured alleged that property damage occurred within the policy period of an occurrence-based commercial general liability insurance policy, such that the insurer's duty to defend and indemnify the insured is triggered, when the pleadings allege that actual damage was continuing and progressing during the policy period, but remained undiscoverable and not readily apparent for purposes of the discovery rule until after the policy period

---

**37.** 7A John Alan Appleman, Insurance Law and Practice § 4491.01 (Walter F. Berdal ed., 1979).

**38.** 7 Couch on Insurance § 102:22 (footnote omitted); *see also Gelman Scis., Inc. v. Fid. & Cas. Co. of N. Y.*, 456 Mich. 305, 572 N.W.2d 617, 623 (1998) ("The manifestation trigger simply is not supported by the policy language."), *reh'g granted on other grounds*, 456 Mich. 1230, 576 N.W.2d 168 (Mich.1998), *overruled on other grounds by Wilkie v. Auto–Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776 (2003); *Kief Farmers Coop. Elevator Co. v.*

*Farmland Mut. Ins. Co.*, 534 N.W.2d 28, 35–36 (N.D.1995) (noting that "[t]he policy language does not even hint that property damage must be known to anyone in order to trigger coverage," and that "[w]e will not rewrite this contract of insurance to exclude coverage on the basis of a manifestation theory").

**39.** *Id.* at § 102:28.

**40.** *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994).

ended because the internal damage was hidden from view by an undamaged exterior surface?

 As to the duty to defend, we answer this question "yes."[41] Under the "eight corners" rule of Texas insurance law, the insurer's defense duty turns on the policy's terms and the plaintiff's allegations. The duty is triggered if the plaintiff alleges facts that would give rise to any claim against the insured that is covered by the policy.[42] The OneBeacon policy itself imposes a duty to defend without regard to the merits of the underlying claim against the insured; it imposes on the insurer "a duty to defend any" suit[43] seeking damages for "bodily injury" or "property damages" covered by the policy,

regardless of whether the plaintiff in the underlying action has a legally meritorious claim. By purchasing the policy, DBS acquired a contractual right to a defense against both meritorious and nonmeritorious claims for property damage.[44]

Based on our answer to the first certified question, the insurer's duty to defend DBS depends on whether the homeowners' pleadings allege property damage that occurred during the policy term. Under the actual-injury rule applicable to this policy, a plaintiff's claim against DBS that any amount of physical injury to tangible property occurred during the policy period and was caused by DBS's allegedly defective product triggers OneBeacon's duty to defend.[45] This duty is not diminished be-

41. Insofar as the second question asks whether the pleadings have triggered the duty to indemnify, we do not reach that issue because the duty to indemnify is triggered not by the allegations in the pleadings but by whether a plaintiff ultimately prevails on a claim covered by the policy. *See Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 5 (Tex. 2007) (stating, in certified question case inquiring whether duty to defend or indemnify is triggered by allegations in petition, that "[w]e do not reach the duty to indemnify ... as that duty is not triggered by allegations but rather by proof at trial"); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997) ("The duty to indemnify is triggered by the actual facts establishing liability in the underlying suit.").

42. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex.2004).

43. The policy defines a "suit" as any "civil proceeding in which damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies are alleged." We express no opinion as to when a claim for "bodily injury," "personal injury" or "advertising injury" occurs under the policy, or whether the rules for determining coverage for these claims are different from the rule we adopt today for property damage claims under the policy.

44. *See Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973) ("The ... duty to defend is determined by the allegations of the petition ... without reference to the truth or falsity of such allegations.").

45. Because as to all of the underlying claims, the EIFS was installed during the three-year policy period of the OneBeacon policies, *see supra* note 2 and accompanying text, this case does not require an analysis of coverage questions in circumstances where property damage occurred in the course of a continuing process, but began before the inception of the term of the policy in issue. Nor do we understand the Fifth Circuit to have asked how OneBeacon's indemnity obligations are determined if the facts ultimately show that property damage began during the OneBeacon policy period but continued beyond that period, perhaps into periods covered by other policies. We express no opinion on these questions, *but see Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 855 (Tex.1994) ("If a single occurrence triggers more than one policy ... all insurers whose policies are triggered must allocate funding of the indemnity limit among themselves according to their subrogation rights."); 7 Couch on Insurance § 102:23 (discussing "loss in progress" doctrine); *Montrose Chem. Corp. of Cal. v. Admiral Ins. Co.*, 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878, 885–906 (1995) (adopting continuous trigger rule and discussing "loss

cause the property damage was undiscoverable, or not readily apparent or "manifest," until after the policy period ended. Nor does it depend on whether DBS has a valid limitations defense. The parties could have conditioned coverage on identifiability, but the contract imposes no such limitation.[46]

Today's decision rests upon the specific language of these parties' CGL policies regarding property damage in the construction-defect context, and it is directed only to the specific questions posed by the Fifth Circuit. We intend no position as to whether plaintiffs' claims in the underlying suits are meritorious.

in progress" rule); *N. States Power Co. v. Fid. & Cas. Co. of N.Y.*, 523 N.W.2d 657, 662, 664 (Minn.1994) (following actual injury rule for determining when coverage is triggered in environmental cleanup case, but recognizing that where "the damages occurred over multiple policy periods, the trial court should presume that the damages were continuous from the point of the first damage to the point of discovery or cleanup"); *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 769 N.E.2d 835, 840–42 (2002) (discussing "all sums" versus "pro rata" approaches for allocating losses among policies triggered by continuous occurrence); *Joe Harden Builders, Inc. v. Aetna Cas. & Sur. Co.*, 326 S.C. 231, 486 S.E.2d 89, 91 (1997) (adopting injury-in-fact rule and recognizing the rule allows for "the allocation of risk among insurers when more than one insurance policy is in effect during the progressive damage").

46. In any event, while we believe an injury-in-fact trigger is the only theory of coverage consistent with the policies' plain wording, at minimum it cannot be argued that the policies unequivocally dictate another trigger, and under Texas law terms that are susceptible to multiple reasonable interpretations must be construed in the policyholder's favor. *See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984).