**INSURANCE COMPANY OF NORTH AMERICA et al., Appellants,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Appellee.**

No. 15797.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Sept. 23, 1971.

Rehearing Denied Oct. 14, 1971.

Finis E. Cowan, Houston, Baker & Botts, Houston, of counsel, for appellants.

Fulbright, Crooker & Jaworski, Newton Gresham, Rufus Wallingford, Houston, for appellee.

PEDEN, Justice.

Suit between insurers to determine their respective liability under their personal property insurance policies. Each policy contains an "other insurance" clause which provides that under certain circumstances its coverage is to be considered as excess insurance. Both insurers filed motions for summary judgment. The trial court granted that of the appellee and denied that of the appellant.

The parties entered into this stipulation in the trial court:

"Effective November 15, 1967, Fireman's Fund Insurance Company issued to Dresser Industries, Inc., (Dresser) its 'Inland/Multi Peril Binder' (the Fund Policy), a true copy of which is attached and marked Exhibit 'A'.

"Effective September 19, 1967, Insurance Company of North America, Centennial Insurance Company, The Fidelity & Casualty Company of New York and Federal Insurance Company jointly issued to Dresser their 'Marine Combined Policy of Insurance' (the Wortham Policy), a true copy of which is attached and marked Exhibit 'B'. The respective participations of such insurance companies issuing the Wortham Policy is shown on said Exhibit.

"Neither the Fund Policy nor the Wortham Policy had been cancelled or otherwise terminated as of December 17, 1967, and both were in full force and effect on December 17, 1967.

"Prior to December 17, 1967, Dresser had contracted with Shell Oil Corporation to fabricate and sell to Shell Oil Corporation certain gas engine driven compressor packages designed to be used on offshore oil production platforms. A true copy of this contract is attached hereto as Exhibit 'C'. On December 17, 1967, one of such compressor packages (the same being known as Dresser's Job No. 10409) was in process of fabrication but not completed and was located on a barge floating in a slip at Jacinto Port, Houston Ship Channel, Texas. At such time and place the barge capsized causing the compressor package and its component parts to fall into the water and sustain substantial damage.

"For its loss so sustained Dresser made claim under both the Fund Policy and the Wortham policy.

"The respective insurance companies issuing such policies were not in agreement and are not now in agreement as to whether each of such policies should contribute thereto or whether one or the other afforded primary insurance and the other excess insurance so that the primary policy should be exhausted before the excess policy was called upon to contribute to the loss; or, if neither of said policies was an excess policy, as to the manner in which such policies should contribute to said loss under the terms of such policies.

"Dresser agreed to accept the sum of Five Hundred Seventy-five Thousand and no/100 ($575,000.00) Dollars in payment of such loss. In order to avoid litigation with Dresser and so that the respective insurance companies could resolve their differences without putting Dresser to further trouble or expense, the respective insurance companies issuing such policies agreed among themselves that the amount of such loss was in fact Five Hundred Seventy-five Thousand and no/100 ($575,000.00) Dollars and paid to Dresser the sum of Five Hundred Seventy-five Thousand and no/100 ($575,000.00) Dollars and secured its release of them from all claims arising against them because of such loss. Without regard to what their respective liabilities, if any, might be and without

regard to what amounts, if any, might be payable by each of them under their policies but simply in order to make the funds available with which to pay such sum of Five Hundred Seventy-five Thousand and no/100 ($575,000.00) Dollars to Dresser, the insurance Companies advanced and put into the fund with which to pay Dresser the amounts set opposite their respective names below:

Fireman's Fund Insurance
    Company             $287,500.00
Insurance Company of No.
    America              143,750.00
Centennial Insurance Com-
    pany                  57,500.00
Fidelity & Casualty Co. of
    N. Y.                 57,500.00
Federal Insurance Com-
    pany                  28,750.00

"These payments were made by such insurance companies under an agreement which is attached hereto as Exhibit 'D', and incorporated by reference herein."

We will refer to the two policies as the parties have in their briefs: the appellant's is "the I N A policy" and the appellee's is "the Fund policy".

The "other insurance" clauses, both of which are "excess clauses", are as follows: From the Fund policy:

"Other Insurance—This policy does not attach to or become insurance against any peril upon property herein described, which at the time of any loss is covered by other insurance (meaning insurance in the name of the insured but not written upon the identical plan, terms, conditions and provisions contained in this policy) until the liability of such other insurance has been exhausted, and then shall cover only such loss as may exceed the amount due from such other insurance (whether collectible or not) * * *."

From the I N A policy:

"Other Insurance: It is understood and agreed that where any specific insurance exists in the name of the Assured on property insured hereunder, this insurance shall be considered as excess insurance and shall not apply or contribute to the payment of any loss until the amount collectible from all such specific insurance shall have been exhausted. * * *"

It is clear from an examination of the two policies that the I N A policy is not written upon the identical plan, terms, conditions and provisions contained in the Fund policy, so the condition provided in the Fund policy for invoking its excess clause has been met.

If the excess clause in the I N A policy is to be invoked the Fund policy must afford specific insurance for the loss in question.

For a discussion of the factors involved in resolving conflicts between "other insurance" clauses in concurrent automobile liability policies, see Hardware Dealers Mutual Fire Insurance Co. v. Farmers Insurance Exchange, 444 S.W.2d 583 (Tex. Sup.1969).

The Fund policy is on a form entitled "Multi-Peril Commercial Property Floater Non-Reporting Form". It covers personal property. The insuring agreement recites that the policy is extended to insure against all risks of direct physical loss or damage from any external cause to the property covered while anywhere within the 48 contiguous states of the United States of America, the District of Columbia and Canada and in due course of transit within and between such places, and between such places and the Dominion of Canada, subject otherwise to all of the provisions and stipulations of the policy to which this form is attached including endoresments thereon, except as hereinafter provided.

It states that the property covered is: Item A—On stock, materials and supplies of every description usual or incidental to the operations of the Insured, consisting principally of industrial products of the Insured including the Insured's interest in

materials, labor and charges furnished, performed on or incurred in connection with the property of others; Item B—On furniture, fixtures, equipment and machinery.

However, paragraph 12.J expressly excludes coverage of

(1) All personal property on premises described under attached Schedule A except for the following:

a. Motor vehicles and

b. Stocks of merchandise of Pacific Pumps, Inc. and Lane-Wells Div., and Security Engineering Div.

(2) All personal property on premises described under attached Schedule B except for motor vehicles,

(3) Except for motor vehicles, all personal property of Dresser Magcobar Division.

Schedule A, attached to the policy, lists fourteen premises, such as "1. Pacific Pumps, Inc. Located at 5714–16 Bickett St., Huntington Park, California. Schedule B lists thirteen additional premises plus two other items. Neither schedule contains any reference to Jacinto Port, Houston Ship Channel, Texas.

The policy contains this provision:

LIMITS OF LIABILITY FOR ALL CONTRIBUTING INSURANCE

"A. Property at the location(s) specifically identified below:

Street Address, City & State

$3,500,000.00    On Personal Property situated at: 5714–16 and 5715 Bickett St., Huntington Park, California

$ 750,000.00    On Personal Property situated at: 12920 East Whittier Blvd., & 8317 Greenleaf Avenue, Whittier, California

$1,025,000.00    On Patterns and Dies situated at: Cooper Alloy, Bloy & Ramsey Avenue, Hillside, New Jersey

$1,000,000.00    on property while waterborne within Jacintoport, Houston Ship Channel, Texas

"B. Property at other locations not specifically identified under Item A:

$ 500,000.00    in the aggregate at all such locations, not to exceed $500,000.00 at any one location.   xxxxxxxx R P B 11/29/67

"C. Property in the following situations:

(1) $500,000.00    on property in due course of transit (Other than property in the care, custody or control of salesmen) on any one vehicle owned, operated or leased by the Insured.

(2) $ NIL    on property in the care, custody or control of any salesman of the Insured away from the Insured's premises.

(3) $500,000.00    in any one loss, disaster or casualty as respects property in the custody of carriers for hire or in due course of transit other than as provided in (1) and (2) above."

As an example, it will be seen that the policy provides $3,500,000 coverage on motor vehicles and stocks of merchandise of Dresser's Pacific Pumps, Inc., located at 5714–16 Bickett St., Huntington Park, California, but not any other Dresser property at that location. The policy does not afford coverage for all industrial products of the insured, wherever they might be located, within the "Limits of Liability for All Contributing Insurance", which we have recited.

We are not here concerned with determining which of the two policies was the more specific but, by way of illustration, point out that in the I N A policy each of four compressor packages was insured by serial number for a specified amount of coverage, for a specified premium, between specified dates while within a ten-mile radius of the insured's plant at Jacinto Port, Texas.

Definitions of the terms "specific insurance", "blanket insurance" and "floating insurance" are found in 44 C.J.S. Insurance § 48:

"Specific insurance. The question of what is 'specific insurance' has been said to be one on which there is much difference of opinion among the courts. The expression is frequently used in contrast with 'blanket insurance,' and in this sense means insurance which in the event of loss is distributed among the several items in a specific amount to each item; insurance which, although covering several different articles, limits insurer's liability to a fixed sum on each separate article; insurance covering a particular piece of property, or property at a specific location. Insurance may also be specific, however, because it insures against a specific peril, or because it insures in a specific amount as distinguished from monthly reporting insurance. Specific insurance and floating insurance are mutually exclusive."

"Blanket or compound insurance is insurance in which every item of property described therein is covered to the whole amount of the policy; insurance under which full indemnity must be paid for the destruction of any item covered by the policy, even though the loss exhausts the whole amount of the policy; insurance covering property collectively without providing for a distribution of the insurance as to each item in the event of a loss. Blanket insurance also denotes insurance covering property in several different locations, or insurance which contemplates that the risk is shifting, fluctuating, or varying, and which covers a class of property rather than any particular thing."

"Floating or blanket and floating insurance. Floating insurance is intended to supplement specific insurance and to provide indemnity for property which cannot well be covered by specific insurance because of its frequent change in location and quantity, or for property of such a nature as not to admit of a gross valuation."

Blanket insurance covers every item of property described in the policy to its whole amount; the destruction of any item, even though all others remain uninjured, requires indemnity from the insurer, if necessary, to the full amount of the policy. Republic Ins. Co. v. American Ice Co., 2 S.W.2d 329 (Tex.Civ.App.1928, writ dism.).

The determination as to which definition best fits the coverage afforded to the loss in question by the Fund policy is a difficult one. The Fund policy provides basic limits of liability of $500,000 at most locations, but it provides more coverage at certain specified other ones. No effort is made to specify that it is the compressor package units that are being insured at Jacinto Port, much less to identify them by serial number, to recite the number of them or to limit liability to a fixed sum on each of them.

On the other hand, all of the insured's personal property at Jacinto Port is covered while waterborne to the extent of $1,000,000 no matter how many compressor package units might be there at the time of a loss.

No provision is made for distribution of the insurance as to each item in event of a loss. Although the risk shifts and fluctuates, the coverage varies with location of the property and it is a class of property that is covered rather than a particular thing.

Applying the recited definitions, we conclude that the Fund policy did not constitute specific insurance, so the "other insurance" clause in the I N A policy is not applicable and the Fund policy provides only excess coverage over that of I N A on the loss in question. Since the loss amounted to less than I N A's coverage, the Fund companies are not required to participate in payment of it.

We have carefully reviewed the cases cited by the parties in which the terms "specific insurance" and "blanket insurance" are defined and applied. Generally speaking they follow the definitions we have set out above. We think it would not be helpful to review them here. Many of them are cited in 44 C.J.S. Insurance § 48 and are discussed in an annotation beginning at 169 A.L.R. 387.

The judgment of the trial court is affirmed.