Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# OPINION

No. 04-09-00322-CV

**SAFECO LLOYDS INSURANCE COMPANY**,
Appellant

v.

**ALLSTATE INSURANCE COMPANY**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-13041
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Marialyn Barnard, Justice

Delivered and Filed: December 23, 2009

REVERSED AND REMANDED

This is an appeal from a trial court's order granting a motion for summary judgment filed by

Allstate Insurance Company, and denying a competing motion filed by Safeco Lloyds Insurance

Company. The motions concerned the interpretation of automobile insurance policies of each

carrier. Safeco appeals claiming the trial court erred in granting Allstate's motion and denying its

motion. We reverse and remand.

## BACKGROUND

### *The Underlying Accident*

On July 8, 2009, Natalia Ramos was driving a 1994 Mazda pickup truck owned by her brother, Gerardo Rivera, when she was involved in an accident with a vehicle driven by Carlos Luna. Luna made a claim for property damage and personal injuries. The Mazda was insured under a policy issued by Safeco to Pedro Rivera, the father of Natalia and Gerardo. Ramos had an Allstate insurance policy for her personal vehicle, which was not the vehicle she was driving at the time of the accident. After the accident, Safeco made numerous demands upon Allstate, requesting that Allstate provide liability coverage on a pro rata basis. Allstate refused, contending its policy provided only excess liability coverage when its insured is driving a vehicle not listed on the Allstate policy, as in this case. In other words, Allstate claimed "the insurance follows the vehicle, not the driver."

### *The Insurance Policies*

As noted, Safeco insured Gerardo Rivera's vehicle by way of a policy owned by Pedro Rivera ("the Safeco policy"). The Safeco policy provides liability coverage as follows:

**PART A – LIABILITY COVERAGE**

**INSURING AGREEMENT**

A.    We will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident . . .

**OTHER INSURANCE**

If there is other applicable liability insurance available any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible liability insurance.

The policy held by Ramos, which covered her personal vehicle, which she was not driving at the time of the accident, was provided by Allstate ("the Allstate policy"). As to liability, it provided:

**PART A – LIABILITY COVERAGE**

**INSURING AGREEMENT**

A.  We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident . . .

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the portion that our limit of liability bears to the total of all applicable limits.

However, any liability insurance we provide to a covered person for the maintenance or use of the vehicle you do not own shall be excess over any other applicable liability insurance.

*The Procedural History*

Safeco filed a petition seeking a declaratory judgment. Safeco asked the trial court to declare (1) the Safeco policy is excess to the Allstate policy pursuant to the "Other Insurance" provision; (2) the Allstate policy is excess to the Safeco policy pursuant to the "Other Insurance" provision; (3) because the language in each policy is effectively the same, the provisions are mutually repugnant; (4) coverage for the damages claimed by Luna must be pro-rated between the two policies pursuant to the coverages provided to each insured as set forth on the declarations page; and (5) Safeco is entitled to recover its costs and disbursements resulting from the action, including attorney's fees. Allstate filed a general denial, and then a motion for summary judgment. In its motion for summary judgment, Allstate asserted Safeco's policy provided primary coverage for Ramos because the Mazda was the vehicle covered by the Safeco policy. It further asserted the Allstate policy provided

only excess liability coverage to Ramos because she was driving the Mazda at the time of the accident, which was not listed on the Allstate policy. Safeco filed a response and its own motion for summary judgment, contending both policies provided excess coverage and therefore, each must bear a proportionate share of coverage for the claimed loss.

The trial court granted Allstate's motion for summary judgment, and denied the one filed by Safeco. Safeco nonsuited its claims against Ramos and filed this appeal.

### ANALYSIS

#### *Standard of Review*

A traditional motion for summary judgment is granted only when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 847 (Tex. 2009). An appellate court reviews the grant or denial of a motion for summary judgment de novo. *Id.*; *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). The denial of a motion for summary judgment is generally not appealable, but can be reviewed on appeal when both parties moved for summary judgment and the trial court granted one motion and denied the other. *Id*. In such cases the appellate court reviews each summary judgment, determines all questions presented, and renders the judgment the trial court should have rendered. *Id*.

When a controversy can be resolved by proper construction of an unambiguous contract, summary judgment is appropriate. *Id*.; *see also Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 56 (Tex. App.—Dallas 2006, pet. denied) (citing *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987)). However, if the contract is ambiguous, summary judgment is improper because the intent of the parties is a fact issue. *Hackberry Creek*,

205 S.W.3d at 56 (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979)).

***Applicable Law and Discussion***

Insurance policies are construed according to the same rules of construction that apply to contracts generally. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). "Effectuating the parties' expressed intent" is the court's primary concern. *Id.* If an insurance policy uses unambiguous language, it must be enforced as written. *Id.* However, if a contract is susceptible to more than one reasonable interpretation, any ambiguity must be resolved in favor of coverage. *Id.* Courts give policy terms their "ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning. *Id.* No single phrase, sentence, or section should be considered apart from the other policy provisions, and a court must give the words in the policy their plain meaning, without inserting additional provisions. *Id.* Interpretation or construction of an unambiguous contract is a matter of law to be determined by the court. *Coats v. Farmers Ins. Exch.*, 230 S.W.3d 215, 217 (Tex. App.—Houston [14th Dist.] 2006, no pet.). We agree with the parties that the insurance policy clauses at issue are unambiguous.

This matter clearly involves the proper construction of competing "other insurance" clauses. In *Hardware Dealers Mut. Fire Ins. v. Farmers Ins. Exch.*, the Texas Supreme Court recognized that with regard to automobile insurance, three kinds of "other insurance" clauses have developed as devices to limit coverage or liability: (1) a pro rata clause, which restricts liability upon concurring insurers to an apportionment basis, (2) an excess clause, which restricts liability upon an insurer to excess coverage after another insurer has paid up to its policy limits, and (3) an escape clause, which

avoids all liability if other insurance exists. 444 S.W.2d 583, 586 (Tex. 1969). Normally, these clauses do not present any difficulties; however, when more than one policy covers the same insured and each policy has an "other insurance clause," problems arise. Conflicts regarding these three types of clauses can be classified into five groups:

> •one policy contains an excess clause, the other a pro rata clause
> •one policy contains an escape cause, the other a pro rata clause
> •both policies contain excess clauses
> •one policy contains an excess clause, the other an escape clause
> •one policy contains a "specific escape clause," which specifies the kind of "other insurance" that will relieve the escape-clause insurer of liability.

*Id. Hardware Dealers* dealt with the fifth class – a specific escape clause specifying the kind of "other insurance" that would relieve the former insurer of liability. *Id.* In harmonizing conflicting clauses, the supreme court noted that other courts had come up with three theories to allocate liability – the "prior-in-time" theory,[1] the "primary tort-feasor" theory,[2] and the "more specific in its restriction" theory.[3] *Id.* at 587. The first two methods were generally criticized and rejected, but the third theory was used by most courts to resolve apparent conflicts in concurrent policies. *Id.* However, the Texas Supreme Court found the third method no better than the other two, noting it did nothing more than encourage the "continuing battle of draftsmanship of still more specific policy

---

[1] Under this theory, the insurer whose policy had the earliest effective date was held liable. *Hardware Dealers*, 444 S.W.2d at 587 (citing *New Amsterdam Cas. Co. v. Hartford Accident & Indemnity Co.*, 108 F.2d 653 (6th Cir. 1940)). This method was criticized as arbitrary and unreasonable "because the time of coverage is not so significant as the vital fact that there was coverage at the time of an accident." *Hardware Dealers*, 444 S.W.2d at 587.

[2] This method places liability upon the insurer whose named insured is the tortfeasor. *Hardware Dealers*, 444 S.W.2d at 587. It too has been declared arbitrary and rejected by most courts because it would deny coverage for an unnamed or additional insured even though it was the intent of an insurer to cover him or her as an insured. *Id.* (citing *Zurich Gen. Accident & Liability Ins. Co. v. Clamor*, 124 F.2d 717 (7th Cir. 1941)). Moreover, is not helpful when the tortfeasor is a named or unnamed insured in both policies. *Hardware Dealers* , 444 S.W.2d at 587.

[3] Under the third method, the court determines which one of the "other insurance" provisions is the more specific in its restriction, and then gives effect to it. *Id.* (citing *Trinity Universal Ins. Co. v. Gen. Accident, Fire & Life Assurance Co.*, 35 N.E.2d 836 (Ohio 1941)).

terms." *Id.* at 588 (citing *Concurrent Coverage in Automobile Liability Insurance*, 65 COLUM. L. REV. 319, 322 (1965)). The supreme court also disapproved of the method used by the court of appeals, which held Hardware's escape and Farmers' excess provisions were specific and in conflict, and therefore allocated coverage "in the light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums are based and as determined by the primary function of each policy." *Hardware Dealers*, 444 S.W.3d at 588-89.

Instead, the supreme court held the conflict in *Hardware Dealers* was best decided by giving "dominant consideration to the rights of the insured." *Id.* at 589. Given the insurers' usual concession that whatever the result, the insured's coverage must be no less than if she had been protected by but one policy, the court reasoned that insurers implicitly concede policies should be construed liberally in favor of the insured and strictly against the insurer. *Id.* If it were otherwise, even though the insured is generally unnamed and unheard in any lawsuit, she loses the benefit of the rule that requires a strict construction of the policy against the insureds. *Id.* She also "loses by reason of the long delay . . . while the insurers litigate whether she is covered and who will defend her." *Id.* Although the supreme court held the insured is not a necessary party to the action between the insurers, it held that in construing the two insurance policies against each other, the rule that the insured's rights are favored must still prevail. *Id.*

Based on this reasoning, the supreme court held that in "resolving issues between double insurers," the court must determine whether from the view point of the insured "she has coverage from either one of two policies but for the other, and each contains a provision which is *reasonably subject to a construction that it conflicts with a provision in the other concurrent insurance*." *Id.* (emphasis added). If so, there is a conflict in the provisions and when such a conflict exists, the

conflicting provisions must be ignored, and the court must look to the remaining policy provisions to determine coverage. *Id.* at 589-90. If both policies provide coverage in the absence of the conflicting clauses, "liability is equally prorated between the two companies and each has an obligation to defend the insured." *Id.* at 590. Looking at the Hardware and Farmers' policies, both in the absence of the other would have covered the insured. *Id.* Accordingly, the supreme court held each insurer was liable for its pro rata share up to the limits as stated in the policies, and obligated to defend the insured. *Id.*

Safeco contends *Hardware Dealers* controls this case, requiring Safeco and Allstate to share responsibility on a pro rata basis for liability coverage. Safeco argues the *Hardware Dealers* test should be applied even though this case involves two excess clauses, not an escape clause and an excess clause. We agree that *Hardware Dealers* is not limited in application to situations involving an escape clause and an excess clause. We find the supreme court's holding is broader than that, and provides a general rule for resolving all conflicting "other insurance" clauses. Moreover, although no Texas court has applied *Hardware Dealers* to cases other than those involving escape clauses,[4] the Fifth Circuit and several other jurisdictions have applied *Hardware Dealers* to situations involving policies other than those containing an escape clause and an excess clause. *See Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 643 (5th Cir. 2004) (cautioning against overly narrow construction of *Hardware Dealers* rule, and using *Hardware Dealers* to determine existence of conflict between pro rata clause and excess clause and resulting liability); *Or. Auto. Ins.*

---

[4] *Cf. Ins. Co. of N. Am. v. Fireman's Fund Ins. Co.*, 471 S.W.2d 878, 880 (Tex. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). In *Fireman's Fund*, the First Court of Appeals found it unnecessary to apply *Hardware Dealers* because the excess clauses under the "other insurance" section of the policies it was reviewing were not in conflict. However, the court directed readers to *Hardware Dealers* "[f]or a discussion of the factors involved in resolving conflicts between 'other insurance' clauses in concurrent automobile liability policies," suggesting *Hardware Dealers* might apply to cases involving two excess clauses. *Id.*

*Co. v. U.S. Fid. & Guar. Co.*, 195 F.2d 958 (9th Cir. 1952) (using same reasoning as *Hardware Dealers*, holding that where driver was operating someone else's vehicle and was covered by vehicle owner's policy and by his own auto policy, both of which had excess clauses in "other insurance" portion of policies, policies were "mutually repugnant," were to be disregarded, and prorating liability); *U.S. Auto. Ass'n v. Hartford Accident & Indem. Co.*, 414 S.W.2d 836 (Tenn. 1967) (using same reasoning as *Hardware Dealers*, holding in case where driver was covered by U-Haul policy and personal automobile policy that two excess clauses in policies conflicted and prorating liability between insurers).[5]

Accordingly, we will apply the test set forth in *Hardware Dealers* to determine proper liability in this case. As noted above, the supreme court held that to determine if there was a conflict, we should, from the point of view of the insured, first determine if the insured has coverage from either one of the two policies, but for the other. *Hardware Dealers*, 444 S.W.2d at 589. If the insured is covered by each policy but for the existence of the other, the supreme court requires that we then determine if each policy contains a provision "which is reasonably subject to a construction

---

[5] *See also St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 210 n.25 (5th Cir. 1996) (rejecting party's argument that *Hardware Dealers* was not applicable because pending matter did not involve conflict between escape clause and excess clause, rather a pro rata and escape clause, stating "*Hardware Dealers* set forth a general principle for resolving conflicting 'other insurance' clauses, and that principle controls our decision in this case."); *USF Ins. Co. v. Clarendon Am. Ins. Co.*, 452 F. Supp.2d 972, 1001 (C.D. Cal. 2006) (holding identical excess insurance clauses "cancel one another out" and insurers are required to contribute to loss on pro rated basis); *Twin City Fire Ins. Co. v. Fireman's Fund Ins. Co.*, 386 F. Supp.2d 1272, 1279 (S.D. Fla. 2005) (holding incompatible excess clauses cancel each other out and loss is pro rated between policies); *Ruan Transp. Corp. v. Truck Rentals, Inc.*, 278 F. Supp. 692, 695 (D. Colo. 1968) (holding that where policies both contained excess clauses providing coverage "would come into play only after any other primary insurance" was exhausted, loss would be prorated); *Citizens Mutual Auto. Ins. Co. v. Fireman's Fund Ins. Co.*, 234 F. Supp. 931, 936 (W.D. Mich. 1964) (holding liability would be pro rated between insurers because competing excess clauses were of "no effect" and therefore each policy provided valid insurance); *State Farm Mut. Auto Ins. Co. v. Gen. Mut. Ins. Co.*, 210 So.2d 688, 694 (Ala. 1968) (holding excess clauses were "mutually repugnant" and loss should be apportioned between insurers); *Travelers Indem. Co. v. Am. Cas. Co. of Reading, Pa.*, 786 N.E.2d 582, 586 (Ill. App. Ct.), *app. denied*, 803 N.E.2d 502 (Ill. 2003) (holding that if two insurance policies have "mutually repugnant" clauses providing that each will be excess insurance of other applicable insurance, each insurance company is liable for pro rata share of judgment or settlement).

that it conflicts with a provision in the other concurrent insurance." *Id.* We find both portions of the test are met in this case.

The Safeco policy covered the Mazda that was involved in the accident, and the policy provides that Safeco "will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." An "insured" includes "[a]ny person using your covered auto with your express or implied permission." Pursuant to the provisions of the Safeco policy, Ramos was covered under that policy at the time of the accident because she was operating the Mazda, a vehicle covered under the policy. Under the Allstate policy issued to Ramos, she is covered when she is operating any private passenger automobile: Allstate "will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." "Covered person" includes "[the insured] or any family member for the ownership, maintenance or use of any private passenger type auto, sport utility vehicle, pickup or van or trailer." Ramos was the "named insured" on the Allstate policy and at the time of the accident was using a "private passenger type auto." Ramos was therefore covered under the Allstate policy at the time of the accident. Accordingly, the first part of the *Hardware Dealers* test is satisfied.

As to the conflicts portion of the *Hardware Dealers* test, we hold it too is satisfied. Safeco's "other insurance" provision states that if there is any other available, applicable insurance, then any insurance provided by Safeco "shall be excess over any other applicable liability insurance," and if there is another policy that supplies excess coverage, Safeco's excess coverage will be provided proportionate to the other excess insurance. Allstate's "other insurance" provision states that if there is "other applicable similar insurance," it will pay only its share of the loss, which is the proportion

that its limit of liability bears to the total of all applicable limits. It further provides that any insurance provided by Allstate "with respect to a vehicle you do not own shall be excess over any other collectible insurance." A reasonable interpretation of the language in the "other insurance" provisions is that each purports to be excess to other liability insurance, thereby creating the type of conflict described in *Hardware Dealers*. A "reasonable interpretation" does not have to be the "'more likely reflection of the intent of the parties,'" but need be "'no more than one which is not itself unreasonable.'" *Id*. (quoting *Continental Cas. Co. v. Warren*, 152 Tex. 164, 167, 254 S.W.2d 762, 763 (1953)).

Allstate argues *Hardware Dealers* is neither controlling nor persuasive, claiming the policies in this case are not subject to a construction that they conflict. In support of its argument, Allstate relies on the following paragraph in *Hardware Dealers* in which the supreme court, quoting an insurance law treatise, describes how many courts have concluded that a general escape clause "must yield to [a] more specific excess clause[,]" resulting in full liability by the escape-clause insurer:

> It has been held that where the owner of an automobile or truck policy has a policy with an omnibus clause, and the additional insured also has a nonownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability. In such a case, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. It should be noted that under this rule, the courts give no application to the other insurance clause in the primary policy, which provides that if the insured has other valid and collectible insurance, he shall not be covered by the primary policy. That is because the insurance under the excess coverage policy is not regarded as other collectible insurance, as it is not available to the insured until the primary policy has been exhausted. Or, to put it another way, a non-ownership clause, with an excess coverage provision, does not constitute other valid and collectible insurance within the meaning of a primary policy with an omnibus clause.

*Hardware Dealers*, 444 S.W.2d at 587 (quoting 8 APPELMAN, INSURANCE LAW & PRACTICE § 4914 (2d ed. 1962)). Allstate contends that if the reasoning in this paragraph is applied to this case, all

coverage under Safeco's policy must be exhausted before any payment is due under Allstate's policy. According to Allstate's reasoning, because the Safeco policy has an omnibus clause, i.e., "[w]e will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident . . . [,]" and the Allstate policy provides only excess coverage to covered persons driving vehicles they do not own, the policy limits in the Safeco policy must be exhausted before any excess liability on the part of Allstate is triggered. Thus, the Allstate policy is not "other applicable liability insurance," because the Mazda driven by Ramos is simply not covered under the Allstate policy, and there is no conflict between the "other insurance" clauses.

In making this argument, Allstate ignores language in its own policy, concentrating only on the excess language in the "other insurance" clause while ignoring the express language that the Allstate policy provides primary liability coverage when any "covered person" becomes legally responsible because of an auto accident. A "covered person" is defined in the Allstate policy to mean the insured "or *any family member* for the ownership, maintenance or *use of any private passenger type auto*, sport utility vehicle, pickup or van or trailer." (emphasis added) Because Ramos was a "covered person" under the terms of the Allstate policy, it too provided primary liability coverage, thereby meeting the first requirement of the *Hardware Dealers* test and requiring the court to look at the "other insurance" clauses to determine if there was a conflict. So, contrary to Allstate's contention, its policy does not simply provide excess coverage when a covered person is driving a non-owned vehicle; rather, it provides primary coverage for any covered person using any private passenger automobile. If we accept Allstate's position, we would have to ignore the plain language of the Allstate policy in direct contravention of the admonition in *Don's Bldg. Supply,*

*Inc.* that no section of an insurance policy should be considered apart from the other policy provisions. 267 S.W.3d at 23.

Additionally, the passage from *Hardware Dealers* upon which Allstate relies to support its argument is not a statement from the supreme court adopting the rule that where the owner of a vehicle has a policy with an omnibus clause, and the additional insured also has a non-ownership policy providing that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has primary liability. Rather, in noting the various methods used by courts to reconcile competing insurance clauses, the supreme court quoted Appelman's insurance treatise to illustrate the "specific v. general" test used by most courts. The supreme court did not adopt the test stated in Appelman, but expressly rejected it.

Allstate's proposed position would render *Hardware Dealers* meaningless. Although the supreme court expressed its disdain for drafting contests, it noted that such contests arose based on the very rule relied upon by Allstate from Appelman's treatise. *Hardware Dealers*, 444 S.W.2d at 588 ("Faced with these decisions which cast primary liability upon the insurer whose policy contained the more general clause, many insurers redrafted the wording of their general escape clauses in order to out-specific the specific excess clauses in other policies."). In *Hardware Dealers*, the supreme court created a rule that rendered such drafting contests irrelevant – the policy behind the rule was to give dominant consideration to the rights of the insured rather than attempting to interpret a conflict in dueling insurance policies. 444 S.W.2d at 589. Allstate's proposed rule as espoused by Appelman would not only render the rule created in *Hardware Dealers* meaningless, but would return us to the "general v. specific" battle rejected by the court.

In addition to the foregoing, Allstate argues the "other insurance" language in the Safeco policy is against public policy. Allstate first cites to two Texas cases, contending these cases establish Texas has "followed the rule that the insurer of a car provides primary insurance and the insurer of the driver provides excess insurance." *See Snyder v. Allstate Ins. Co.*, 485 S.W.2d 769, 772 (Tex. 1972); *Taylor v. State Farm Lloyds, Inc.*, 124 S.W.3d 665, 671 (Tex. App.—Austin 2003, pet. denied). We find these cases do not support the rule for which they are cited.

In *Snyder*, Rhodes purchased a car for his daughter, Darla. 485 S.W.2d at 770. Insurance on the car was held by Rhodes through Allstate. *Id.* Darla permitted Robert Snyder to drive her car, and he had an accident. *Id.* Allstate sought a declaratory judgment decreeing that it had no obligation to pay or defend, but that the obligation fell upon Snyder's carrier, Fidelity. *Id.* The supreme court noted that both policies had "other insurance" clauses which stated each provides excess insurance with respect to non-owned vehicles, but prorated coverage for owned vehicles. *Id.* While the supreme court noted the existence of the other clauses, the issue before the court was whether a named insured must have actual ownership of the "owned automobile" to be covered under the policy language. *Id.* The fact that there were competing clauses formed no part of the court's decision, and nowhere in the decision does the court create a general rule that the insurance on the vehicle is always the primary insurance. *Id.* at 771-773.

In *Taylor*, the Austin Court of Appeals stated that the issue before the court was "whether PIP and UM/UIM coverage is mandatory when an endorsement for hire and non-owned auto liability is added to a business's multi-peril insurance policy." 124 S.W.3d at 668. The court held that hired and non-owned auto liability coverage issued as an endorsement under a multi-peril business policy was not subject to the requirements of a traditional automobile policy. *Id*. at 671. Although the

court noted that in most cases "hired and non-owned auto coverage operates much like an excess policy-excess to primary coverage owned by the user-there are situations in which the hired and non-owned auto policy could be the only, and thus primary coverage," the court held such cases were inapplicable to the case before it. *Id*. at 671. Nowhere does the court espouse a black-letter rule that insurance follows the vehicle.

If the "insurance follows the car" rule existed in Texas, the supreme court would not have had to address the conflicting insurance clauses in *Hardware Dealers* because the insurer of the car would have automatically have been deemed the primary insurer. Given that the court created a rule for resolving conflicts, it obviously did not believe that Texas mandates the rule espoused by Allstate. And, in fact, the lower courts in *Hardware Dealers* held the insurer of the covered vehicle was primarily responsible, but the supreme court reversed these holdings. *Hardware Dealers*, 444 S.W.2d at 583.

Allstate also contends the Texas Department of Insurance ("TDI") has "encouraged continued adherence to this general rule" that the insurance follows the car by adopting it into TDI's pattern "other insurance" provision in its personal auto policy form. The TDI pattern "other insurance" provision produced by Allstate in support of its summary judgment states:

> If there is other Personal Injury Protection Insurance, we will pay only our share. Our share is the proportion that our limits of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other applicable liability insurance.

Allstate argues that by changing the language in its policy from the standard language in an effort to "shelter under *Hardware Dealers*" Safeco has engaged in the sort of drafting contest rejected by the supreme court in *Hardware Dealers*. Allstate further contends Safeco violated public policy by

changing the wording in its policy in an attempt to turn every other insurer's excess coverage into primary coverage, resulting in pro rata apportionment. We disagree with Allstate's contentions.

Safeco's policy, including the "other insurance" provision, was approved by the insurance commissioner as required by law. *See* TEX. INS. CODE ANN. § 2301.006(a) (Vernon 2009)(stating that unless otherwise provided, insurer may not use insurance form unless form has been filed with and approved by commissioner[6]). The commissioner could have disapproved the form if it violated public policy, but did not. *Id*. § 2301.007(a). Moreover, the deviation is of no moment because the supreme court itself has encouraged insurers to draft policy language to reflect their interpretation of policy provisions and then seek TDI approval. *See Don's Bldg. Supply, Inc.*, 267 S.W.3d at 29 (explaining that if insurer intends certain interpretation of a policy provision it should make such intent explicit in policy and seek approval by TDI). Safeco acted as suggested by the supreme court, and obtained the necessary approval. Accordingly, we hold it would be unfair to denounce Safeco's "other insurance" provision based on public policy.

In sum, we hold the test announced by the Texas Supreme Court in *Hardware Dealers* applies in this case. Applying that test, we conclude Ramos has coverage from both of the policies but for the existence of the other, and each policy contains a provision that is reasonably subject to a construction that it conflicts with a provision in the other concurrent policy. *See Hardware Dealers*, 444 S.W.2d at 589. Accordingly, as stated in *Hardware Dealers* the "offending" provisions must be ignored. *Id.* Ignoring the conflicting provisions, we hold Safeco and Allstate share liability on a pro rata basis in proportion to the amount of insurance provided by their respective policies, and

---

[6] The commissioner is the chief executive of the Texas Department of Insurance and its administrative officer. TEX. INS. CODE ANN. § 31.021(a) (Vernon 2009). It is the commissioner's duty to administer and enforce the insurance code and other insurance laws of Texas. *Id.*

therefore the trial court erred in granting Allstate's motion for summary judgment and denying Safeco's motion for summary judgment.

***Attorney's Fees***

In its prayer for relief, Safeco asks that if we reverse the trial court's judgment and find in its favor, that we remand to the trial court for consideration and determination of Safeco's attorney's fees and costs, which it requested pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. Section 37.009 of the Civil Practice and Remedies Code provides that in any declaratory judgment proceeding, the trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008).

Allstate responds that Safeco is not entitled to attorney's fees and costs because it did not name Allstate in Allstate's proper capacity in its pleading, and even though Allstate identified the pleading defect in its First Amended Answer,[7] Safeco failed to correct the pleading defect before it filed its motion for summary judgment, and continues to misidentify Allstate in this appeal. Because of this pleading error, Allstate contends any ruling by the trial court that Allstate pay attorney's fees and costs would have no binding effect because Allstate is not properly named in the lawsuit. Allstate contends this court is in the same position as the trial court, and the continued misidentification of Allstate means that any order that Allstate pay attorney's fees under Chapter 37 would have no binding effect. In support of its argument, Allstate cites *Lone Star Gas Co. v. R.R. Comm'n of Tex.*, 767 S.W.2d 709, 710 (Tex. 1989) and rule 43.3 of the Texas Rules of Appellate Procedure. However, neither of these authorities deals with the issue of a misnamed party and

---

[7] In its First Amended Answer, Allstate plead: "Allstate Insurance Company is not a proper party Defendant in that Defendant Allstate Insurance Company did not issue the insurance policy complained of. Rather the property [sic] party Defendant is ALLSTATE FIRE & CASUALTY INSURANCE COMPANY."

attorney's fees and costs under Chapter 37. Rather, both authorities merely hold that a court of appeals must render judgment when it appears that further proceedings in the trial court are unnecessary. *Id.*

Safeco counters that Allstate's position is without merit, arguing that all that has occurred is a misnomer, which would not invalidate the judgment, as opposed to a misidentification. A misidentification arises when two separate legal entities exist and a plaintiff mistakenly sues an entity with a name similar to that of the correct entity. *In re Greater Houston Orthpaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009). A misnomer occurs when a party misnames another party, but the correct parties are involved in the action. *Id.* The consequences of misidentification are generally harsh, but the same is not true for misnomers. *Compare Enserch Corp. v. Parker*, 794 S.W.2d 2, 5 (Tex. 1990) (holding that in case of misidentification, plaintiffs sued wrong party and limitations was not tolled) *with Chen v. Breckenridge Estates Homeowners Ass'n, Inc.*, 227 S.W.3d 419, 421 (Tex. App.—Dallas 2007, no pet.) (holding misnomer does not invalidate judgment between parties where record and judgment together establish with certainty the person and subject matter to be bound). Courts are flexible in misnomer cases because the party intended to be sued has been served and put on notice that it is the intended defendant. *In re Greater Houston Orthpaedic Specialists,* 295 S.W.3d at 326.

In this case, the record establishes Allstate was served and on notice that it was the intended defendant. In fact, Allstate even referred to itself as "Defendant, ALLSTATE INSURANCE COMPANY" in its motion for summary judgment seeking declaratory relief and its own attorney's fees. When Allstate responded to Safeco's motion for summary judgment, it did so as "Defendant, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, improperly named as

ALLSTATE INSURANCE COMPANY." Allstate does not assert in this appeal that the summary judgment in its favor is inapplicable.

Allstate was served and knew it was the intended defendant. Accordingly, we hold the misnomer does not render the request for attorney's fees or any potential award of same invalid. *See Chen*, 227 S.W.3d at 420; *see also Charles Brown, L.L.P. v. Lanier Worldwide Inc.*, 124 S.W.3d 883, 895 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that Texas law recognizes misnomer of defendant does not render judgment void if intent to sue correct defendant is evident from pleadings and process such that defendant could not have been misled).

On remand, Safeco can amend its petition to reflect Allstate's proper name. *See Enserch Corp.*, 794 S.W.2d 4-5 (holding that misnomer tolls limitations and subsequent amendment of petition relates back to date of original petition). The amended petition would permit judgment for attorney's fees and costs to be entered against Allstate under Chapter 37 should the trial court find them appropriate.

### CONCLUSION

Based on the foregoing, we reverse the trial court's judgment in favor of Allstate, and hold judgment in favor of Safeco is proper. Accordingly, we remand this matter to the trial court for (1) a determination of Safeco's request for attorney's fees, and (2) for entry of judgment in light of that determination, and in accordance with this court's opinion on the substantive issue of liability.


Marialyn Barnard, Justice