# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 25, 2010

No. 09-20311

Charles R. Fulbruge III
Clerk

DELTA SEABOARD WELL SERV'S, INC.

Plaintiff-Appellant

v.

AMERICAN INT'L SPECIALTY LINES INS. CO.

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, WIENER, BENAVIDES, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Delta Seaboard Well Services, Inc. ("Delta") sued Defendant-Appellee American International Specialty Lines Insurance Co. ("AISLIC") in state court seeking coverage under an excess commercial liability ("Umbrella") policy issued by AISLIC. After removal and on a motion for summary judgment, the district court held that there was no coverage under the umbrella policy. We affirm.

## I. Facts and Proceedings

Delta is an oil and gas well servicing company that plugs non-productive wells for operating companies. In 2003, Delta contracted with Fort Apache Energy, Inc. to plug a well. Sometime after Delta completed plugging the well,

No. 09-20311

Fort Apache discovered that Delta had known that the gas pressure at the well-head had not "bled off" or dissipated, a fact that Apache maintained required Delta to cease its plugging operation and notify Apache because persistent well-head pressure indicates that recoverable reserves might be present. In July of 2005, Fort Apache sued Delta for negligently causing "loss of hole" by continuing the plugging operation despite its knowledge of persistent well-head pressure. Apache alleged that Delta's negligent plugging rendered these reserves unrecoverable.

During the time of the Fort Apache operation, Delta was insured under a commercial liability policy that it had purchased in March 2003 from Gemini Insurance Company (the "Gemini policy"). This policy had limits of $1 million for each occurrence and $2 million in aggregate. It covered Delta for the period of March 2003 to March 2004. In May of 2005, after Delta's plugging operation was completed, but prior to the Fort Apache lawsuit, Delta had also purchased the Umbrella policy from AISLIC for excess coverage. The Umbrella policy's limit was $5 million dollars in aggregate and covered the period of May 2005 to May 2006.

When Fort Apache sought recovery from Delta, Delta immediately informed Gemini of the suit. Gemini promptly denied coverage under the Gemini policy, citing a policy exclusion for "loss of hole" claims. In January 2008, a Texas state court held Delta liable to Fort Apache for the loss of hole. It was only after this judgment was rendered that Delta, for the first time, informed AISLIC of the Fort Apache action. AISLIC promptly denied coverage as excluded under the Umbrella policy's terms. In May 2008 the Texas court awarded more than $2 million in damages to Fort Apache, which Delta settled for $1,450,000.00. In a separate declaratory action, Gemini sued Delta to establish that it had owed no duty to defend or indemnify Delta in the Fort

2

No. 09-20311

Apache suit. In December 2008, a Texas state court held that the Gemini policy excluded coverage for loss of hole.

Delta then brought suit in Texas state court to recover a portion of its Fort Apache settlement from AISLIC under the Umbrella policy. AISLIC removed the action on diversity grounds. On a motion for summary judgment, the district court held that (1) the Gemini policy is the underlying policy contemplated by AISLIC's Umbrella policy, and the Gemini policy's loss of hole exclusion, which is identical to the Umbrella policy's exclusion, applies, so that the Umbrella policy does not cover damages paid by Delta to Fort Apache; (2) by waiting almost three years from service to notify AISLIC, Delta failed to comply with the Umbrella policy's notice provisions, and AISLIC was prejudiced thereby; and (3) as a state court had already ruled that the loss of hole exclusion language in the Gemini policy excluded coverage, Delta is precluded from re-litigating this issue against AISLIC as Delta's putative excess insurer. The district court granted summary judgment to AISLIC and issued a take nothing order. Delta timely appealed.

## II. Standard of Review

We review a grant of summary judgment de novo.[1] The district court's interpretation of an insurance contract and its exclusions is a question of law and is subject to de novo review.[2] A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any

---

[1] *American Home Assur. Co. v. United Space Alliance, LLC,* 378 F.3d 482, 486 (5th Cir. 2004).

[2] *Lubbock County Hosp. Dist. v. National Union Fire Ins. Co.*, 143 F.3d 239, 241-42 (5th Cir. 1998).

3

No. 09-20311

material fact, and that the moving party is entitled to judgment as a matter of law.[3]

### III. Analysis

When sitting in diversity, a federal court will apply the choice of law rules of the forum state.[4] Texas law states that

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby ....[5]

Neither party disputes that Texas law controls.

Under Texas law, insurance policies are interpreted according to the rules of contract construction.[6] If the insurance policy is worded so that it can be given "a definite meaning or a certain legal meaning," the policy is not ambiguous.[7] The plain language of an insurance policy, like that of any other contract, must be given effect when the parties' intent may be discerned from the plain language.[8] If the policy language has only one reasonable interpretation, it is not ambiguous, and we construe it as a matter of law.[9] If the contract is susceptible to two or more reasonable interpretations, it is ambiguous, and we

---

[3] Fed. R. Civ. P. 56(c).

[4] *Cantu v. Jackson Nat. Life Ins. Co.*, 579 F.3d 434, 437 (5th Cir. 2009).

[5] TEX. INS. CODE ANN. art. 21.42.

[6] *Am. Mfrs. Mut. Ins. Co. v. Schaeffer*, 124 S.W.3d 154, 157 (Tex.2003).

[7] *Id.* (citation omitted).

[8] *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex.2004).

[9] *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex.2006); *Schaefer*, 124 S.W.3d at 157.

4

must resolve the uncertainty by adopting a construction that favors the insured as long as that construction is not unreasonable.[10]

Delta contends that summary judgment should be reversed because there are genuine issues of material fact whether (1) coverage is excluded by either the Gemini policy or the Umbrella policy; (2) issue preclusion prevents Delta from litigating the issue of coverage; and (3) Delta timely complied with the Umbrella policy's notice provision. Because the Umbrella policy's "follow-form" endorsement unambiguously adopts the exclusions of the Gemini policy, however, that policy's exclusion for loss of hole is dispositive.

The crux of this dispute is the interplay between the Umbrella policy and the underlying insurance policies in the 2003-2006 period, most pertinently the Gemini policy that provided primary commercial liability coverage. The Umbrella policy provided commercial liability coverage to Delta during the applicable coverage periods, but only in excess of the pertinent primary policy's coverage limits. This excess coverage is further limited by the Umbrella policy's "follow-form" endorsement and is expanded by a so-called "sunrise" endorsement. The follow-form provision states:

> This insurance does not apply to Commercial General Liability.
>
> However, if insurance for Commercial General Liability is provided by a policy listed in Scheduled Underlying Insurance:
>
> > 1. This exclusion shall not apply; and
> >
> > 2. Coverage under this policy will follow the terms, definitions, conditions and exclusions of the Scheduled Underlying Insurance subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by the Scheduled Underlying Insurance.

---

[10] *Fiess*, 202 S.W.3d at 746 (citing *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991)).

No. 09-20311

The Scheduled Underlying Insurance (the "Schedule") does not identify particular policies but instead refers to policy limits.

The Umbrella policy's sunrise endorsement limits coverage to the policy period of May 1, 2005-May 1, 2006, but expands the policy's period of excess coverage by deeming occurrences before and after these dates to have occurred during the "Policy Period." It is undisputed that the *primary* commercial general liability policy for the 2003 period is the Gemini policy, and that it excludes coverage for loss of hole.[11]

The plain language of the Umbrella policy's "follow-form" endorsement makes clear that AISLIC provided coverage *only* in excess of, and as limited by, the underlying policy – here, the Gemini policy. Therefore, the threshold question is whether Gemini's underlying policy excludes coverage for loss of hole: If it does, there can be no excess coverage under the plain language of the Umbrella policy. Stated differently, if the Gemini policy is the only underlying insurance contemplated in the Umbrella policy for the time period when the loss of hole occurred, its exclusion of coverage also excludes coverage under the Umbrella policy.

Delta asserts that there is a genuine issue of material fact whether the Gemini policy is the underlying policy for purposes of excess coverage. Delta offers a reading of the Umbrella policy that (1) the Schedule's generic reference to policy limits, rather than specific policies, raises a genuine issue of material fact as to which policy constitutes the underlying policy, and (2) together, the "sunrise endorsement" and the generalized description in the Schedule implicate the 2005-2006 primary policy as the underlying policy.

---

[11] *Gemini Ins. Co. v. Delta Seaboard Well Serv's, Inc.*, No. 2006-27358, slip op. at 1 (164th Judicial District, Harris County, Tex. Dec. 12, 2008) (order granting final summary judgment for Gemini in part because policy excludes commercial liability for loss of hole).

6

Delta's interpretation is unreasonable, and its argument is without support in the record. First, under *Don's Building Supply, Inc. v. Onebeacon Ins. Co.*,[12] a covered "occurrence" under commercial general liability policies such as the Gemini policy is deemed to have occurred when the "actual physical damage to the property occurred."[13] Thus, as a matter of law, the Gemini policy is the applicable "underlying insurance" for the loss of hole occurrence because the damage to the well-head occurred in 2003 and the Gemini policy was the undisputed primary commercial general liability policy for 2003-2004. That coverage period of the Gemini policy, coupled with that policy's congruence with the description of the relevant part of the Schedule, makes clear that the Gemini policy is the underlying policy contemplated by the Umbrella policy.

Given the plain language of the Umbrella and Gemini policies, Delta had the burden to show that there is a genuine issue of material fact whether the Umbrella policy excludes coverage because some policy other than the Gemini policy provided primary coverage.[14] Delta has not borne this burden. Its argument – that for primary policy purposes the Umbrella policy contemplates that the Gemini policy is the underlying policy and for excess policy purposes the 2005-2006 policy (or some other policy) is the underlying policy – is simply unreasonable. The generality of the Schedule does not by its plain language give rise to such a reading. The Umbrella policy unambiguously contemplates *an*

---

[12] 267 S.W. 3d 20 (Tex. 2008).

[13] *Id.* at 24. The Supreme Court of Texas cautioned that the holding of *Don's Building Supply* was not a "universally applicable 'rule'" but rather a conclusion borne of the contract language of the policy. The relevant contract language here, however, is identical to that at issue in *Don's Building Supply*.

[14] *See Bustos v. Martini Club Inc.*, --- F.3d ----, 2010 WL 744301, at *7 (5th Cir. March 5, 2010) ("On summary judgment, once the moving party establishes that there are no factual issues, the burden shifts to the nonmoving party to produce evidence that a genuine issue of material fact exists for trial.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

underlying policy being in effect for the 2003 period, not (as Delta would have it) just *any* policy. It is undisputed that the primary policy in effect in 2003 – the one policy for which primary commercial claims had to be made for occurrences during that period – was the Gemini policy. Nothing in the Schedule or elsewhere in the Umbrella policy changes this fact; it is manifestly unreasonable to read the Schedule's generalized description as implicating some policy for a 2003 occurrence other than the one that is undisputedly the 2003 primary policy, *viz.*, the Gemini policy. Furthermore, Delta's attempt to implicate *excess* coverage by bootstrapping *primary* coverage from the Umbrella policy's sunrise endorsement is likewise unavailing. By its plain language, the Umbrella policy provides coverage *only* if an underlying primary policy provides coverage. The sunrise endorsement, by "deeming" damage to have occurred outside of the policy period, certainly expands this excess coverage. But, as the plain language of the follow-form endorsement states, this coverage obtains *only* in excess of, and as limited by, the underlying policy identifiable from the Schedule; obviously, the Umbrella policy does not provide primary coverage.

In short, the only policy that contemplates primary coverage for the 2003 period is the Gemini policy, and that is the only policy in evidence that conforms to the description of the Schedule. Again, Delta's strained reading of the Umbrella policy is not reasonable, and it has put forth no evidence that the 2005-2006 policy, or any policy other than the Gemini policy, covered the 2003 period. Indeed, rather than offering the 2005-2006 policy in support of its argument, Delta tries to rely on its absence to defeat summary judgment by asserting that it is AISLIC's burden, as the moving party, to show that the 2005-2006 policy is *not* the underlying policy. A party may not, however, manufacture an issue of material fact by declining to offer material evidence when it has the burden to do so. The plain language of the AISLIC policy shows that the Gemini policy is the one and only underlying policy, for purposes of the loss of hole in

No. 09-20311

2003, and it was incumbent on Delta to rebut this with evidence of its own. It has not done so.

Accordingly, the district court's grant of summary judgment is, in all respects, AFFIRMED.