# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 30, 2011

No. 09-41123

Lyle W. Cayce
Clerk

RON SIMMONS, CHARLES SCOTT SYKES, JR.; RANDY HAUGEN:
VALORIE HAUGEN; ORRIN WOODWARD; LAURIE WOODWARD;
CHRIS BRADY; TERRY BRADY; WILLIAM FLORENCE;
PEGGY FLORENCE; DONALD WILSON; NANCY WILSON;
TIMOTHY MARKS; AMY MARKS; NANCY CULLEN; KIRK BIRTLES;
CASSANDRA BIRTLES; JIM MARTIN; DOLORES MARTIN; ARON
RADOSA; MARY RADOSA; CHUCK GOETSCHEL; DAVID BRANDY;
BRUCE GILBANK; JESSILYN GILBANK; MIKE MARTENSEN;
BENJAMIN DICKIE; CHUCK CULLEN

Plaintiffs - Appellants

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY

Defendant - Appellee

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 4:08-CV-159

Before REAVLEY, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-41123

Appellants appeal the district court's judgment that Appellee Liberty Mutual Fire Insurance Co. ("Liberty") had no duty to defend the Appellants, its insureds, in two separate arbitration proceedings.  We affirm.

## Background

The Appellants are individuals who were Independent Business Owners, commonly known as IBO's, in a multi-level marketing operation owned and run by Quixtar.[1]   Quixtar's multi-level marketing operation recruits IBO's who sell Quixtar's health and beauty products online.  IBO's also earn money by recruiting other new IBO's ("Downstream IBO's") and receiving a bonus based on the sales of their Downstream IBO's.  All IBO's pay an annual fee and sign an annual contract with Quixtar.  Among other things, the contract contains an arbitration provision, a code of conduct, a confidentiality provision, and a non-compete clause.

The relationship between the Appellants and Quixtar became strained.  According to Quixtar, the Appellants began soliciting Downstream IBO's to leave Quixtar and join other multi-level marketing operations, in part by disparaging the Quixtar opportunity.  In 2007, three of the Appellants, Ron Simmons, Lisa Simmons, and Charles Scott (the "Simmons Appellants") demanded arbitration (the "Simmons Arbitration") against Quixtar to challenge the enforceablity of the non-compete agreement.  Quixtar counterclaimed, asserting causes of action for (1) breach of contract, (2) tortious interference with existing contract, (3) tortious interference with advantageous business relationships, (4) misappropriation of trade secrets, and (5) violations of the Lanham Act.  At about the same time, Quixtar initiated separate arbitration proceedings (the "Woodward Arbitraion") against the remaining Appellants (the "Woodward Appellants") alleging the same causes of action, minus the Lanham Act claim.  Both groups of Appellants

---

[1] Quixtar is the successor company to Amway in the United States.

No. 09-41123

claim that Liberty Mutual owed them a defense in their respective arbitrations per the terms of the policy.  Liberty Mutual disagreed.

Liberty Mutual issued a General Commercial Liability Policy for the Independent Business Owners Benefits Association ("IBOBA")—consisting of authorized IBO's.  The policy covered, in addition to the Association,

> Each authorized [IBO] who elects coverage in accordance with IBOBA procedures, but only with respect to the operation of their Independent Business as described in the Independent Business Ownership Plan for North America.  Coverage is excluded for any other business or personal activities not related to Insured's IBO activities under the Independent Business Ownership Plan.

The Independent Business Ownership Plan defines an IBO as "a person authorized to sell products and service Members and Clients; register others as IBOs, Members, and Clients; and upon qualification can receive bonuses and participate in business incentive programs."  IBO's are covered under the policy for injury arising from "personal and advertising injury," which covers "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]"

In May 2008, all Appellants jointly filed this declaratory judgment action seeking a judgment that Liberty Mutual had a duty to defend them in their respective underlying arbitrations.  The parties filed cross-motions for summary judgment.  The Magistrate Judge determined that Liberty Mutual had no duty to defend Appellants in either arbitration because Appellants did not qualify as "Named Insureds" under the policy and entered final judgment for the Appellee.  Appellants moved for reconsideration and new trial, which the Magistrate Judge denied.  Appellants timely appealed.

No. 09-41123

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The district court's interpretation of an insurance contract and its exclusions is a question of law and is subject to de novo review." *Delta Seaboard Well Servs., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 602 F.3d 340, 342–43 (5th Cir. 2010). Where, as here, the court sits in diversity, the choice of law rules of the forum state apply. *Id.* at 343. The Texas Insurance Code dictates that Texas law applies to insurance contracts. *See* TEX. INS. CODE ANN. art. 21.42. The parties do not dispute that Texas law applies.

## Analysis

The Magistrate Judge held that Liberty had no duty to defend Appellants because *inter alia* Appellants were not insured under the policy for the claims against them in the underlying arbitrations. Specifically, the Magistrate Judge held that the actions alleged by Quixtar in the arbitrations did not fall into the scope of coverage under the policy because those actions were in direct competition with Quixtar and, thus, were not based on the operation of the IBO's Independent Businesses. On appeal, Appellants argue that the Magistrate Judge erred because the acts alleged in the arbitration cannot be separated from the operation of their Independent Businesses and those acts fall within the policy's coverage for personal and advertising injuries. We do not reach the question of whether the allegations in the underlying complaints would be considered personal and advertising injuries because we agree with the Magistrate Judge that the acts alleged were not part of the operation of the Independent Businesses and thus, not within the scope of coverage of the policy.

Texas courts interpret insurance policies using general rules of contract construction to discern the parties' intent. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). We give policy

4

terms their plain meaning, construing the policy as a whole. *Don's Bldg. Supply Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). "If an insurance contract uses unambiguous language, we must enforce it as written." *Id.* However, we must resolve any ambiguities in favor of coverage. *Id.*

Under Texas's eight corners rule, "[a]n insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). "If the factual allegations against the insured, fairly and reasonably construed, state a cause of action potentially covered by the policy, the duty to defend arises." *Republic-Vanguard Ins. Co. v. Mize*, 292 S.W.3d 214, 219 (Tex.App.–Amarillo 2009, no pet.). It is the factual allegations rather than the labels on the causes of action that determine whether there is a duty to defend. *Gilbert*, 327 S.W.3d at 135.

The policy provides coverage for authorized IBO's "but only with respect to the operation of their Independent Business as described in the Independent Business Ownership Plan for North America" (the "Plan"). Appellants argue that because the accusations that form the basis of Quixtar's complaint were that Quixtar was operating an illegal business, the actions were "with respect to the operation of" their businesses within the meaning of the policy. Further, they contend that the word "operation" is at least ambiguous and that under Texas law it must be construed in their favor. However, Appellants read the phrase "with respect to the operation of" their business without reference to the rest of the policy, violating a basic canon of contract construction. Instead, we read the phrase in harmony with the policy as a whole to give effect to all of its provisions. *Gilbert*, 327 S.W. 3d at 126. The policy makes clear that the business activities must be as described in the Plan. Texas law allows us to look at the Plan because it is incorporated by reference. *Phillips Petroleum Co. v. St. Paul Fire & Marine Ins. Co.*, 113 S.W.3d 37, 40 (Tex.App.–Houston [1st Dist.]

No. 09-41123

2003, pet. denied).  Unsurprisingly, disparaging Quixtar while trying to recruit Downstream IBO's away from Quixtar is not any part of the Plan.

Even if the policy did not reference the Plan, we would still hold that the IBO's alleged activities do not fall within the scope of the policy.  The policy expressly excludes coverage for "any other business or personal activities."  All of the actions alleged by Quixtar stem from the IBO's efforts to start their own competing businesses.  They sought release from the non-compete obligations in their contract.   Quixtar contended that they actively recruited other Downstream IBO's to leave Quixtar and join a new multi-level marketing operation.  These actions fall under the category of other business activities.  And, they cannot be considered activities "with respect to the operation of" their Quixtar IBO's because these actions are actually inconsistent with or antithetical to the operation of a Quixtar IBO.  Therefore, the Magistrate Judge did not err in finding that there was no coverage under the policy for the acts alleged in the underlying arbitrations.

The judgment is AFFIRMED.